STATE OF NORTH CAROLINA v. TERRY WAYNE McDOUGALD

No. 7812SC378

(Filed 17 October 1978)

1. **Criminal Law § 31— radio and television publicity of case—failure to take judicial notice—no error**

The trial court did not abuse its discretion in failing to take judicial notice of radio and television broadcasts concerning the case, and defendant was not denied the opportunity to prove the occurrence of such broadcasts or their contents.

2. **Criminal Law § 15.1— exposure of jury to publicity—burden of proving prejudice on defendant**

A defendant has not borne his burden of showing that he will be denied an impartial jury solely by introducing evidence that his case has received widespread news coverage or that some prospective jurors have been exposed to such coverage and formed or expressed opinions based upon their exposure; rather, the defendant must additionally show that it is reasonably likely that prospective jurors would base their conclusions in his case upon pretrial information rather than evidence introduced at trial and would be unable to put from their minds any previous impressions they may have formed. Defendant in this case failed to show that jurors would base their conclusions and verdict upon pretrial publicity and preconceived impressions and therefore failed to show a reasonable likelihood that pretrial publicity would prevent a fair trial.

3. **Criminal Law § 101.2— news coverage—warning instruction to jury**

Where the trial court, prior to commencement of jury selection, thoroughly cautioned the prospective jurors that they should not read, watch or listen to any type of news coverage of the trial and fully explained the importance of this instruction to the jury, and defendant was permitted to ask each juror what he or she had read or heard concerning the case and was given full opportunity to challenge any jurors he believed might have been prejudiced, the trial court did not abuse its discretion in declining to instruct the jurors to avoid listening to or reading news coverage concerning the trial, when it appeared that one of the prospective jurors had listened to the radio on the morning of her examination on voir dire.

4. **Jury § 6.3— examination of prospective juror—limitation proper**

The trial court did not err in refusing to allow the defendant to ask a prospective juror whether he could determine guilt or innocence in the case without the defense presenting evidence, since defendant had already determined by prior questioning that the juror would return a verdict of not guilty if he were not convinced of the defendant's guilt beyond a reasonable doubt, that the juror understood the presumption of innocence and that he did not believe it was necessary for the defendant to take the stand.

**5. Jury § 7.6— challenge of juror for cause denied—defendant not prejudiced**

The trial court did not err in failing to allow defendant's challenge for cause of a juror who stated that he would not require the State to carry its burden of proof, since the record on appeal indicated that the juror simply misunderstood the question; moreover, defendant failed to seek to exercise an additional peremptory challenge after exhausting his permitted peremptory challenges, and he therefore cannot benefit from this exception and assignment of error.

**6. Constitutional Law § 30— production of all written statements requested—denial proper**

The trial court did not err in denying defendant's motion to compel production of any written statements or reports made by witnesses for the State, since defendant was not entitled to such information pursuant to G.S. 15A-904(a); nor did due process require the production of such evidence since the defendant had received summaries of statements made by the State's witnesses which were sufficient to provide defendant with all of the material testimony which might be drawn from each witness and to alert defendant to any prior statements by the witnesses tending to be inconsistent with their testimony at trial.

**7. Constitutional Law § 30— production of all typed statements requested—denial as fishing expedition**

The trial court did not err in denying defendant's motion to require the State to disclose all typed statements of any witnesses interviewed by the State in order that the defendant might determine whether they contained any exculpatory information, since such motion was clearly a fishing expedition so broad in its nature as to constitute a motion for the production of memoranda and other internal documents prepared by law enforcement officers, and the court was not required to order the production of such materials to defendant.

**8. Criminal Law § 73.4— statement not part of res gestae**

Defendant's contention that statements made by him after the crime charged were admissible as part of the res gestae is without merit, since the statements in question were made at a time and place remote from the occurrence of the crime charged.

**9. Constitutional Law § 30— failure to comply with discovery order—sanctions**

When a party to a criminal proceeding fails to comply with discovery requirements, the trial court may impose sanctions upon that party which include holding the party in contempt, ordering discovery, granting a continuance or recess, prohibiting the party from introducing the evidence or entering other appropriate orders. G.S. 15A-910.

**10. Constitutional Law § 30— failure to disclose statement pursuant to discovery order—defendant allowed a recess—statement properly admitted**

The trial court did not err in allowing testimony by a State's witness concerning a statement made by defendant to the witness after the alleged crime, though the statement was not disclosed to defendant pursuant to his earlier discovery motion, since the State was unaware of the statement prior to trial;

defendant was provided with a copy of the statement at the time of the objection; and the court granted defendant a recess in order to allow him to prepare for cross-examination of the witness concerning the statement.

**11. Criminal Law § 88— no signed statements of witnesses provided defendant—right to cross-examine not denied**

Defendant was not denied his right to cross-examine witnesses because he was not provided with signed prior statements of the witnesses since defendant was not entitled as a matter of right to have prior statements reduced to writing and signed and since defendant did, in fact, cross-examine each and every witness called by the State.

**12. Criminal Law § 101.2— conference in chambers—presence of newspaper reporters—no misconduct affecting jury**

When the presence of reporters will not work to the prejudice of either party, the trial court may in its discretion allow the presence of reporters during conferences in chambers; defendant in this case introduced no evidence whatsoever tending to show that the presence of newspaper reporters prejudiced him in any way.

**13. Criminal Law § 134.2— sentencing—delay to obtain character witnesses denied—no error**

The trial court did not err in denying defendant's motion to delay sentencing to give him an opportunity to call various character witnesses to testify in his behalf, since the court's charge to the jury began during the morning and the jury did not return a verdict until 4:30 p.m.; this should have given defendant an adequate opportunity to secure the presence of his character witnesses; and the court indicated that it would wait a reasonable time for any witness to appear in court and did in fact delay the proceedings until two witnesses arrived.

**14. Criminal Law § 134.4— regular youthful offender—no benefit finding made—sentence proper**

The trial court did not abuse its discretion in sentencing defendant as a regular youthful offender where the court found that defendant would derive no benefit from treatment and supervision as a committed youthful offender, and the court was not required to set forth reasons for this finding.

APPEAL by defendant from *Clark, Judge.* Judgment entered 2 September 1977 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 25 August 1978.

The defendant was indicted for the felony of second degree murder and entered a plea of not guilty. The jury returned a verdict of guilty as charged and, from judgment sentencing him to imprisonment for a term of not less than thirty nor more than forty years, the defendant appealed.

The State offered evidence tending to show that on 6 January 1977 the defendant and Bobby Miller were engaged in a basketball game as part of a phisical education class at Terry Sanford Senior High School. During the game, the defendant grabbed Bobby Miller in an attempt to get the basketball, and Bobby reacted by swinging his elbows which resulted in the defendant being struck in the mouth. The two students scuffled briefly in the locker room after the game and were separated by other students. Later in the day, Bobby Miller told his brother Ricky about the incident. Ricky Miller indicated that, if the fight started again, he would be there to help. Ricky went to the locker room after school that day and inquired as to where he could find the defendant. He located the defendant and asked him about the incident with his brother. A struggle then ensued.

The State offered several witnesses who testified that they observed the struggle between Ricky Miller and the defendant, Terry McDougald. One of these witnesses testified that he saw what he thought was either a knife or a comb in the defendant's hand prior to the fight. Another of the eyewitnesses testified to seeing what appeared to be an afro-pick in the defendant's hand during the fight and that, at that time, he saw something fall to the floor where the two were fighting. A third State's witness testified that he saw something in the defendant's hand and later saw something fall to the floor. He then picked up the object and identified it as a knife about six to seven inches long.

The fight continued up and down the aisles of the locker room and into a hallway. Ricky Miller then stepped back from the defendant and blood was observed on Miller's shirt. He said something to the defendant and ran outside. He was then taken to the hospital and died shortly after his arrival. Shortly after the fight, the defendant gave a knife to John Gainey and told Gainey to keep it for him.

The defendant did not elect to present evidence.

Other pertinent facts are hereinafter set forth.

*Attorney General Edmisten, by Assistant Attorney General Thomas B. Wood, for the State.*

*Mary Ann Tally, Public Defender, Twelfth Judicial District, for defendant appellant.*

MITCHELL, Judge.

[1]   The defendant first assigns as error the failure of the trial court to take judicial notice of radio and television broadcasts concerning this case. This assignment is without merit.

Courts may take judicial notice of facts generally known from radio, television and press coverage. Courts may also take notice of the fact that news media broadcasts have occurred. *State v. Williams,* 263 N.C. 800, 140 S.E. 2d 529 (1965). However, the decision as to whether judicial notice of facts should be taken is left to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion.

The failure of the trial court to take judicial notice of news broadcasts in the present case did not deny the defendant the opportunity to prove the occurrence of such broadcasts or their contents. Such facts could have been easily proven by witnesses ordinarily available. There was no showing of abuse of discretion by the trial court. Therefore, the trial court did not err in failing to take judicial notice that the case was the subject of radio and television broadcasts.

The defendant next assigns as error the trial court's denial of his motion for a change of venue on the ground that prejudicial pretrial publicity would prevent his receiving a fair trial in Cumberland County. In support of this assignment, the defendant contends that the denial of the motion by the trial court was an abuse of discretion.

The burden of proof in a hearing on a motion for change of venue is upon the defendant. *State v. Brown,* 13 N.C. App. 261, 185 S.E. 2d 471 (1971), *cert. denied,* 280 N.C. 723, 186 S.E. 2d 925 (1972). In order to prevail, the defendant must show that there is a reasonable likelihood that the prejudicial publicity complained of will prevent a fair trial. *Sheppard v. Maxwell,* 384 U.S. 333, 16 L.Ed. 2d 600, 86 S.Ct. 1507 (1966); *State v. Boykin,* 291 N.C. 264, 229 S.E. 2d 914 (1976). The determination of whether the defendant has met this burden rests within the sound discretion of the trial court. Absent a showing of abuse of discretion, its ruling will not be overturned on appeal. *State v. Alford,* 289 N.C. 372, 222 S.E. 2d 222 (1976); *State v. Mitchell,* 283 N.C. 462, 196 S.E. 2d 736 (1973); *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971).

We recognize that, in *Rideau v. Louisiana*, 373 U.S. 723, 10 L.Ed. 2d 663, 83 S.Ct. 1417 (1963), the Supreme Court of the United States engaged in what amounted to a presumption that jurors who actually sat on a jury and participated in the rendering of a verdict could not have rendered a fair and impartial verdict. That case, however, involved a factual situation in which the defendant's televised confession was participated in by law enforcement authorities and was shown repeatedly to the local viewing audience. The Supreme Court of the United States held that, as three members of the jury which rendered the verdict against the defendant resulting in his being sentenced to death had been exposed repeatedly and in depth to his personal and detailed confession, the failure of the trial court to grant his motion for change of venue, even though the defendant made no further showing, constituted a denial of due process of law.

We feel that *Rideau* is an aberration which should be confined to its facts and not brought into play here. Instead, we apply what we believe to be the correct rule and hold that the defendant in the present case was required to go forward with evidence tending to affirmatively show that prospective jurors in his case were reasonably likely to base their verdict upon conclusions induced by outside influences rather than upon conclusions induced solely by evidence and arguments presented in open court. *Sheppard v. Maxwell*, 384 U.S. 333, 16 L.Ed. 2d 600, 86 S.Ct. 1507 (1966); *State v. Boykin*, 291 N.C. 264, 229 S.E. 2d 914 (1976). In addition to being constitutionally correct, we feel that the application of this standard will have the salutary effect of avoiding the potential for needless friction between the rights of a free press guaranteed by the First Amendment to the Constitution of the United States and the defendant's right to trial by an impartial jury guaranteed by the Sixth Amendment.

Having set forth the general standard by which we are guided, it is necessary to turn to a consideration of the facts presented by this case. The defendant's evidence in support of his motion for change of venue consisted of seventeen newspaper articles from the "Fayetteville Observer" and the "Fayetteville Times." Additionally, the defendant introduced the testimony of Dr. Paul Brandes who qualified as an expert in the field of content analysis and communicology. Dr. Brandes testified that, in his opinion, the articles introduced would be in certain respects

biased against both the defendant and the State. He further testified, however, that there were more statements in the articles which would result in bias against the defendant than those which would result in bias in his favor. Dr. Brandes also testified that he conducted a poll of students at the University of North Carolina and found that the articles would arouse more bias and prejudice in students from Cumberland County than in students from Hoke or Bladen Counties. Dr. Brandes also concluded from the poll that students from Cumberland County had heard more rumors about the case than the other students.

On the basis of this evidence, the trial court entered findings of fact and conclusions of law. The trial court determined that the defendant's evidence did not constitute a showing that reasonable likelihood existed that prejudicial newspaper publicity prior to trial would prevent a fair trial in Cumberland County. Therefore, the trial court denied the defendant's motion for a change of venue.

We fail to see how the testimony of Dr. Brandes could have been of significant assistance to the court. It would seem apparent that publicity indicating the defendant had been charged with murder would tend, with regard to him, to be more unfavorable than favorable. Nor can we say that the quite predictable fact, that students from the county in which the crime charged was alleged to have occurred had heard more rumors about the case than students from elsewhere, may be taken as determinative of the issue raised. We cannot say that the testimony of Dr. Brandes tended to show that potential jurors would base their conclusions in this case on prior news coverage or would otherwise be unable to give the defendant a fair trial. We may not conclude solely upon a review of the pretrial publicity that prejudiced resulted. *United States v. Haldeman*, 559 F. 2d 31, 61 n. 32 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 933, 53 L.Ed. 2d 250, 97 S.Ct. 2641, *reh'g denied*, 433 U.S. 916, 53 L.Ed. 2d 1103, 97 S.Ct. 2992 (1977).

Upon questioning of prospective jurors, several indicated they had been exposed to publicity surrounding this case. Most of the prospective jurors stated specifically that the publicity would have no effect upon them and that they would base their verdict upon the evidence and give the defendant a fair trial. At least

one, however, indicated he had formed a preliminary opinion concerning the case. Upon further questioning, he specifically stated that he could put all such opinions or predispositions from his mind and give the defendant a fair trial upon the evidence presented in open court. We cannot say on these facts that the trial court erred in denying the motion for change of venue. As the Supreme Court of the United States has specifically stated:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . .

*Irvin v. Dowd,* 366 U.S. 717, 723, 6 L.Ed. 2d 751, 756, 81 S.Ct. 1639, 1642 (1961).

[2] Inevitably cases of great public interest will receive thorough coverage by the press and electronic news media, and potential jurors will often be aware of such cases due to this news coverage. A defendant has not borne his burden of showing that he will be denied an impartial jury solely by introducing evidence that his case has received widespread news coverage or that some prospective jurors have been exposed to such coverage and formed or expressed opinions based upon their exposure. The defendant must additionally show that it is reasonably likely that prospective jurors would base their conclusions in his case upon pretrial information rather than evidence introduced at trial and would be unable to put from their minds any previous impressions they may have formed. Where, as here, the defendant fails to show that potential jurors would base their conclusions and verdict upon pretrial publicity and preconceived impressions, he has failed to show a reasonable likelihood that pretrial publicity will prevent a fair trial even though the case has received widespread publicity and some prospective jurors have formed or expressed opinions about the case. *Irvin v. Dowd,* 366 U.S. 717, 6 L.Ed. 2d 751, 81 S.Ct. 1639 (1961); *United States v. Haldeman,* 559 F. 2d 31 (D.C. Cir. 1976), *cert. denied,* 431 U.S. 933, 53 L.Ed. 2d 250, 97 S.Ct. 2641, *reh'g denied,* 433 U.S. 916, 53 L.Ed. 2d 1103, 97 S.Ct. 2992 (1977). *See Calley v. Callaway,* 519 F. 2d 184 (5th Cir.

1975) (*en banc*), *cert. denied*, 425 U.S. 911, 47 L.Ed. 2d 760, 96 S.Ct. 1505 (1976). *But see Rideau v. Louisiana*, 373 U.S. 723, 10 L. Ed. 2d 663, 83 S.Ct. 1417 (1963).

The defendant has failed to show that the trial court abused its discretion by denying his motion for a change of venue. The record on appeal does not indicate that the trial court seated anyone as a juror who could not render a verdict based upon the evidence introduced at trial. Additionally, after exercising his peremptory challenges, the defendant did not attempt to challenge peremptorily an additional juror. Therefore, under long established rules of this jurisdiction, he may not be heard to properly complain of the composition of the jury. *State v. Allred*, 275 N.C. 554, 169 S.E. 2d 833 (1969). We hold the trial court committed no error in denying the defendant's motion for change of venue, and this assignment of error is overruled.

[3] The defendant next contends that the trial court erred by not properly instructing jurors to avoid listening to or reading news coverage concerning the trial, when it appeared that one of the prospective jurors had listened to the radio on the morning of her examination on voir dire. This contention is without merit.

Trial courts necessarily possess great discretion in determining the impact or potential impact of news accounts of a trial upon jurors. The problem arises in such a variety of situations that each case must be decided in light of its own unique facts. *Marshall v. United States*, 360 U.S. 310, 3 L.Ed. 2d 1250, 79 S.Ct. 1171 (1959); *State v. Moye*, 12 N.C. App. 178, 182 S.E. 2d 814 (1971). In the present case, the trial court, prior to commencement of jury selection, thoroughly cautioned the prospective jurors that they should not read, watch or listen to any type of news coverage of the trial. The trial court also fully explained the importance of this instruction to the jury. In addition, the defendant was permitted to ask each juror what he or she had read or heard concerning the case and given full opportunity to challenge any jurors he believed might have been prejudiced. The trial court did not abuse its discretion in declining to give the additional instruction requested.

[4] The defendant next assigns as error the refusal of the trial court to allow the defendant to ask a prospective juror whether he could determine guilt or innocence in the case without the de-

fense presenting evidence. The right of the defendant to inquire into the fitness of jurors is subject to the close supervision of the trial court, and the extent of the inquiry lies within the court's discretion. *State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745 (1972), *cert. denied*, 410 U.S. 958, 35 L.Ed. 2d 691, 93 S.Ct. 1432 (1973), *cert. denied*, 410 U.S. 987, 36 L.Ed. 2d 184, 93 S.Ct. 1516 (1973). Prior to disallowing the defendant's question, the trial court had permitted him to determine by prior questioning that the juror would return a verdict of not guilty if he were not convinced of the defendant's guilt beyond a reasonable doubt, that the juror understood the presumption of innocence and that he did not believe it was necessary for the defendant to take the stand. This gave the defendant sufficient information to ascertain whether grounds existed upon which to base a challenge for cause and to determine whether he wished to exercise a peremptory challenge. Therefore, the trial court did not abuse its discretion, and its refusal to permit the additional question was without error.

[5]   The defendant also assigns as error the trial court's failure to allow his challenge for cause of a juror who stated that he would not require the State to carry its burden of proof. As the defendant failed to seek to exercise an additional peremptory challenge after exhausting his permitted peremptory challenges, he cannot now benefit from this exception and assignment of error. *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970); *State v. Allred*, 275 N.C. 554, 169 S.E. 2d 833 (1969); 8 Strong, N.C. Index 3d, Jury, § 7.14, p. 193. Additionally, upon reviewing the question and answer complained of, we think the record on appeal indicates the juror simply misunderstood the question. Immediately following the question and answer giving rise to the exception and assignment of error, the trial court thoroughly questioned the juror and determined that he would, in fact, require the State to carry its full burden. No more is required, and this assignment of error is overruled.

The defendant additionally assigns as error the failure of the trial court to allow his challenge for cause of a prospective juror who stated he would require the defense to put on some evidence. For the reasons set forth in our discussion of the previous assignment of error, this assignment is without merit. Further, this challenge was made of an alternate juror. As both alternates were dismissed at the conclusion of the evidence and did not par-

ticipate in the jury's deliberations, their ideas, opinions or inter-
pretations of law could not possibly have had any effect upon the
outcome of this case. Any error in their selection, therefore, was
harmless beyond all doubt. This assignment is overruled.

[6]    The defendant next assigns as error the trial court's denial
of his motion to compel production of any written statements or
reports made by witnesses for the State. Questions concerning
discovery must be resolved by reference to statutes and due pro-
cess principles, as no right to pretrial discovery existed at com-
mon law. *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977);
*State v. Carter*, 289 N.C. 35, 220 S.E. 2d 313 (1975); *State v. Hoff-
man*, 281 N.C. 727, 190 S.E. 2d 842 (1972).

The General Statutes of North Carolina relating to discovery
provide that the State must disclose statements by the defendant,
statements by a codefendant, the defendant's prior criminal
record, documents and tangible objects and reports of examina-
tions and tests. G.S. 15A-903. However, G.S. 15A-904(a) specifical-
ly indicates that, absent circumstances not presented by this case,
the State is not required to produce:

> reports, memoranda, or other internal documents made by
> the prosecutor, law-enforcement officers, or other persons
> acting on behalf of the State in connection with the investiga-
> tion or prosecution of the case, or of statements made by
> witnesses or prospective witnesses of the State to anyone
> acting on behalf of the State.

Thus, the defendant did not have any statutory right to the
material requested. We must, therefore, examine the re-
quirements of due process in order to determine the defendant's
entitlement *vel non* to these materials.

Due process requires that the prosecution not suppress infor-
mation favorable to an accused upon his request for its produc-
tion, where the evidence is material either to guilt or punishment.
*Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194
(1963). That is to say that due process concerns center around the
issue of whether the suppressed information might have affected
the outcome of the trial. *United States v. Agurs*, 427 U.S. 97, 49
L.Ed. 2d 342, 96 S.Ct. 2392 (1976). During the hearing before the
trial court on the defendant's motion, counsel for the defendant

acknowledged that she had received summaries of statements made by the State's witnesses. The defendant contends, however, that these written statements were not adequate as they were neither signed nor initialed by the witnesses. We do not agree.

The summarized statements were sufficient to provide the defendant with all of the material testimony which might be drawn from each witness and to alert the defendant to any prior statements by the witnesses tending to be inconsistent with their testimony at trial. In addition, there has been no showing by the defendant that there is a reasonable likelihood that the addition of signatures to the statement would have in any way influenced the outcome of the trial. The trial court did not err in denying the defendant's motion.

[7] The defendant additionally assigns as error the trial court's denial of his motion to require the State to disclose all typed statements of any witnesses interviewed by the State in order that the defendant might determine whether they contained any exculpatory information. When a defendant makes such a general request for exculpatory statements from unspecified witnesses, the determination of whether any of the statements are material and favorable to him is left by him to the prosecution. To require the trial court to assume the role of defense attorney and to analyze every statement of every person interviewed in the course of modern criminal investigations would frequently require days or even weeks of the court's time be spent upon mere fishing expeditions and frequently result in frivolous wastes of limited judicial resources. *See* Nakell, *Criminal Discovery for the Defense and the Prosecution—The Developing Constitutional Considerations*, 50 N.C.L. Rev. 437 (1972).

Here, the defendant moved that the State be required to disclose all typed statements of witnesses, apparently without regard to whether they gave testimony in the case. This motion was withdrawn before being ruled upon by the court. The trial court then allowed the defendant's motion in the alternative that the State be required to disclose those typed statements to the court for examination and review and that they be sealed and retained as part of the record of the court. The defendant further moved that the State furnish statements of all witnesses who had been interviewed by it in connection with its investigation of the

case. This motion was withdrawn, and the defendant made an alternate motion that these statements be placed in a sealed envelope and retained in the custody of the court. Upon inquiry by the trial court, the defendant made it clear that this motion was intended to include all statements without regard to whether the persons giving the statements were called as witnesses and without regard to whether the statements contained any exculpatory information. Upon further inquiry by the court into the matter, the prosecutor indicated this would involve materials concerning the interviews of approximately two hundred people in addition to those witnesses whose statements had already been provided the defendant. The prosecutor also stated that many of these interviews had not been reduced to written statements but were merely contained in sketchy notes kept by the officers, if available at all. The trial court then denied the defendant's motion that all such evidence be sealed and retained by the court.

We find this motion was clearly a fishing expedition so broad in its nature as to constitute a motion for the production of memoranda and other internal documents prepared by law enforcement officers. We do not feel the trial court was required to order the production of such materials to the defendant, to the court *in camera* or in order that they could be sealed and placed in the record for appellate review. *See State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977), *and* Nakell, *Criminal Discovery for the Defense and the Prosecution—The Developing Constitutional Considerations,* 50 N.C.L. Rev. 437 (1972). To hold that such was required of the trial court would be tantamount to a holding that the defendant in a criminal case is entitled to have all relevant and irrelevant materials of every type gathered during any criminal investigation provided to him upon his demand at trial or provided to the court for appellate review. We find no constitutional principle or statute which required the trial court to allow this defendant's demand for all statements gathered by law enforcement officers in the case without regard to whether they contained exculpatory information and without regard to whether they had been reduced to written form. This assignment of error is overruled.

The defendant next assigns as error the trial court's denial of his motion to sequester the State's witnesses. The defendant contends that due to the age of the witnesses, the relationship of the

witnesses to the deceased and the lapse of eight months from the time of the victim's death until trial, the trial court abused its discretion by denying the motion to sequester. We do not agree. The decision as to whether to sequester witnesses rests in the sound discretion of the trial court. Absent a showing of abuse, the decision of the trial court will not be disturbed on appeal. *State v. Barrow*, 276 N.C. 381, 172 S.E. 2d 512 (1970). We find nothing in the record on appeal to indicate that the trial court abused its discretion by denying the defendant's motion to sequester the State's witnesses. The denial of the motion was without error.

[8]   The defendant also assigns as error the trial court's refusal to permit him to cross-examine witnesses with regard to statements made by the defendant immediately after the crime charged. Although the defendant recognizes that such statements are hearsay, he contends that they were admissible under the res gestae exception to the hearsay rule. The statements by the defendant sought to be introduced were made well after the incident leading to the death of the deceased. The defendant had been apprehended by school officials, and his statements were made in response to questions posed by them. The statements, being made at a time and place remote from the occurrence of the crime charged, were not admissible as part of the res gestae. *Coley v. Phillips*, 224 N.C. 618, 31 S.E. 2d 757 (1944); *State v. Stubbs*, 108 N.C. 774, 13 S.E. 90 (1891).

The defendant next contends that the trial court erred by allowing into evidence the testimony of the State's witness, Percy Warren, an assistant principle of the high school, as to what the State's witness, William McFadyen, said immediately after the alleged crime. McFadyen had testified that he was present when the fight between the defendant and the deceased began and that he saw most of the fight. The defendant sought to impeach this witness by showing that he had made a prior inconsistent statement. During the testimony of Warren, the State asked Warren what McFadyen had told him immediately after the fight. Over the objection of the defendant, Warren replied that McFadyen had told him "Terry Mac cut Ricky Miller." Such prior consistent statements of a witness may be admitted to strengthen his credibility. *State v. Warren*, 289 N.C. 551, 223 S.E. 2d 317 (1976); 1 Stansbury, N.C. Evidence, §§ 51 and 52 (Brandis Rev. 1973).

[9, 10]   The defendant also contends that the trial court erred in overruling his objection to the testimony of one of the State's witnesses concerning a statement made by the defendant to the witness after the alleged crime. The statement was not disclosed to the defendant pursuant to his earlier discovery motion, with which the State had indicated it would comply. When a party to a criminal proceeding fails to comply with discovery requirements, the trial court may impose sanctions upon that party. These sanctions include holding the party in contempt, ordering discovery, granting a continuance or recess, prohibiting the party from introducing the evidence or entering other appropriate orders. G.S. 15A-910. The particular sanction to be imposed rests within the sound discretion of the trial court. *State v. Kessack*, 32 N.C. App. 536, 232 S.E. 2d 859 (1977); *State v. Morrow*, 31 N.C. App. 654, 230 S.E. 2d 568 (1976).

The record on appeal does not indicate that the trial court abused its discretion. The State indicated that it was unaware of the statement prior to trial, and the defendant was provided with a copy of the statement at the time of the objection. The trial court granted the defendant a recess in order to allow him to prepare for cross-examination of the witness concerning the statement. The witness was then permitted to testify that when the defendant handed him a knife immediately after the crime charged, the defendant asked the witness to keep it for him. The defendant was permitted to fully cross-examine the witness concerning this matter. We perceive no error on the trial court's part by allowing this testimony into evidence. Further, the witness having testified without objection that the defendant handed him the knife shortly after the crime charged, this testimony as to the defendant's asking the witness to keep the knife added little or nothing to the State's case. Even had it been error, it would have been harmless error beyond a reasonable doubt.

[11]   The defendant also assigns as error the denial of his motion to strike the testimony of the State's witnesses on the ground that his right to cross-examine such witnesses had been denied. The defendant contends that, as he was not provided with signed prior statements of the witnesses, he could not meaningfully cross-examine them. The Sixth Amendment guarantees a defendant the right to confront and cross-examine witnesses against him. In this case, the defendant was given that right and did, in

fact, cross-examine each and every witness called by the State. The defendant was free to cross-examine any witness about any prior inconsistent statement. He was not, however, entitled as a matter of right to have prior statement of all witnesses reduced to writing and signed. Therefore, the trial court properly denied the defendant's motion to strike the testimony of all of the State's witnesses.

The defendant additionally contends that the trial court erred by refusing to exclude newspaper reporters from a conference in chambers. The defendant argues that this denied him the opportunity to enter into plea negotiations without the knowledge of the jury. We do not agree.

[12] When the presence of reporters will not work to the prejudice of either party, the trial court may in its discretion allow the presence of reporters during conference in chambers. The defendant introduced no evidence whatsoever tending to show that the presence of newspaper reporters prejudiced him in any way. As the conference in chambers was held immediately prior to the court's final instructions to the jury, it is highly unlikely that any news concerning the conference could have reached the jury. In any event, the jurors had been previously instructed not to read or listen to anything pertaining to the case.

We recognize that, in this last quarter of the twentieth century, the general public no longer attends sessions of superior court as often as in past years when few other events of public interest were carried on during the weeks in which court was held in a particular county. Although our courts remain open, the average citizen has tended to rely more and more upon newspapers and electronic news media for information concerning matters before the courts. The action of the trial court in allowing newspaper reporters to attend the conference in chambers represented a practical accommodation of the public's interest in knowing of the workings of its court system and the interests of the press under the First Amendment. When such practical accommodations of these interests may be achieved without sacrificing the rights of the parties to a fair trial, they do not constitute error and are to be commended. Just such situation was presented by the facts in this case. The defendant failed to make a showing that the trial court's action in any way worked to his detriment, and this assignment is overruled.

[13]   The defendant further contends that the trial court erred in denying his motion to delay sentencing. He argues that this denied him the opportunity to call various character witnesses to testify on his behalf. The trial court's charge to the jury began during the morning, and the jury did not return a verdict until approximately 4:30 p.m. This should have provided an adequate opportunity for the defendant to secure the presence of his character witnesses. In addition, the trial court indicated it would wait a reasonable time for any witness to appear in court and did, in fact, delay the proceedings until two witnesses arrived. The trial court did not, therefore, commit prejudicial error in denying the defendant's motion to delay sentencing further.

[14]   The defendant's final assignment of error is to the order of the trial court finding that the defendant would derive no benefit from treatment and supervision as a committed youthful offender and sentencing him as a regular youthful offender. Under the law in effect at the time of sentencing, the trial court was required to sentence the defendant as a committed youthful offender, unless it found that he would receive no benefit from such sentence. G.S. 148-49.4. In its judgment and commitment, the trial court found as a fact that the defendant would not derive any benefit from treatment and supervision as a committed youthful offender. There was no requirement that the trial court set forth reasons for this finding. *State v. Jones*, 26 N.C. App. 63, 214 S.E. 2d 779 (1975). The status of committed youthful offender is to be imposed in the trial court's discretion. G.S. 148-49.1. As there was no showing that the trial court abused its discretion in finding that the defendant would benefit from such sentence, the sentence imposed was without error.

The defendant has also made assignments of error relating to the trial court's charge to the jury. We have reviewed the charge in its entirety and find these assignments without merit. Other assignments by the defendant have been specifically abandoned.

The defendant received a fair trial free from prejudicial error, and we find

No error.

Judges VAUGHN and MARTIN (Robert M.) concur in the result.