State v. Peele

STATE OF NORTH CAROLINA v. MIKE PEELE

No. 8120SC265

(Filed 6 October 1981)

1. **Jury § 6.2— jury selection—disallowance of questions concerning reasonable doubt—harmless error**

    Any error of the court in refusing to permit defense counsel to question prospective jurors by using the words "not fully satisfied or entirely convinced" to describe reasonable doubt was harmless since such a limitation did not prevent defense counsel from making sufficient inquiries to exercise intelligently his jury challenges.

2. **Criminal Law § 69— telephone conversation—identity of defendant as caller**

    Even if a witness's opinion that a voice she heard over the telephone was that of defendant was based on the caller's identification of himself as defendant rather than recognition of the caller's voice by the witness, testimony as to the telephone conversation was admissible where there was ample circumstantial evidence that defendant was, in fact, the caller in question.

3. **Larceny § 1.1— instruction on asportation**

    The trial court in a larceny prosecution did not err in instructing the jury that movement of a jewelry box a few feet from the top of a dresser to beneath a bed would satisfy the element of asportation.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 12 November 1980 in Superior Court, RICHMOND County. Heard in the Court of Appeals 15 September 1981.

Defendant was charged in a bill of indictment with felonious breaking or entering, felonious larceny and felonious receiving stolen goods. The State's evidence tended to show that the residence of Thaddius Ussery was forcibly entered on 14 June 1980. A jewelry box was moved from a dresser and placed under a bed in the same room. A pistol was found to be missing from a drawer in a bedside table. The forcible entry apparently occurred between 3:30 p.m. when Mrs. Ussery left the house and 5:00 p.m. when the Usserys' daughter, Angela, returned home. Angela noticed a blue Volkswagen parked in the driveway as she returned. Realizing that the back door of the house was open, and that she did not recognize the car, she noted the first three letters of the license tag (RLN) and drove to a neighboring house for help. She told two children in the yard that she thought someone was breaking into the Ussery house and the children returned with her. Miss Ussery observed a blue Volkswagen like the one

she had seen in her driveway, license number RLN446, driving down the street as she returned. Miss Ussery followed this car until it pulled over a short distance later. She recognized the driver, the defendant here, as an acquaintance. Defendant told Miss Ussery he had been at her house looking for her boyfriend, but that he had not gone inside. Miss Ussery returned home where she found the back door unlocked. Mrs. Ussery's jewelry box had been moved from a dresser, later to be found under a nearby bed, and a gun was missing from a nightstand drawer. Later that evening the windows in Angela's bedroom were found to have been opened. In addition, a screen on the side door had been split and the back and side doors showed signs of tampering.

When questioned that evening by a deputy sheriff, the defendant asked "What if the people get their stuff back?" A search of defendant and his car produced no evidence.

Four days later the defendant called Angela Ussery and asked her to meet him for lunch to discuss what had happened, saying he "could not afford to go through with this." Miss Ussery refused to meet with defendant.

Rodney Ammonds, Miss Ussery's boyfriend, testified that he previously had told the defendant that Miss Ussery was leaving town before 14 June. Ammonds said that some four months after the larceny he saw the defendant at a nightclub and asked him why he broke into the Ussery house. He said defendant first denied, but later admitted, the crime.

Defendant's only evidence was the testimony of a companion who witnessed the confrontation at the nightclub. This witness testified that Ammonds was drunk at the time, and that defendant's only statements to Ammonds were denials of the break-in.

The jury returned a verdict of guilty of breaking or entering and felonious larceny. Defendant was sentenced to one to five years in prison on the larceny charge and to ten years for breaking or entering. Defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General James E. Magner, Jr., for the State.*

*Van Camp, Gill and Crumpler, by James R. Van Camp, for defendant appellant.*

State v. Peele

ARNOLD, Judge.

Defendant brings forth six assignments of error on appeal.

I.

[1] Defendant first argues that the court improperly prevented the defense attorney, during jury selection, from questioning prospective jurors using the words "not fully satisfied or entirely convinced" to describe reasonable doubt. While North Carolina law permits attorneys to inquire diligently of prospective jurors in order to assess their fitness to serve, it is within the court's discretion to control the manner and extent of such inquiry. *State v. Young*, 287 N.C. 377, 387, 214 S.E. 2d 763, 771 (1975); *State v. McDougald*, 38 N.C. App. 244, 253, 248 S.E. 2d 72, 80 (1978). It is clear from the record that the trial court would have allowed the defense attorney to question prospective jurors using the words "reasonable doubt," but would not allow substitution of words chosen by defense counsel which the judge considered to constitute an attempt to "argue the law." Such a limitation did not prevent defense counsel from making sufficient inquiries to intelligently exercise his jury challenges and any error was therefore harmless.

II.

[2] Defendant's second assignment of error concerns admissibility of the opinion of a witness that a voice she heard over the telephone was that of defendant. Defendant contends that the evidence suggests this opinion was based on the caller's identification of himself as defendant rather than recognition of the caller's voice by the witness. While it is true that representation by a caller that he is a certain person is insufficient to establish his identity, "[i]t is not always necessary to prove the identification before introducing evidence of a conversation . . ." so long as the caller's identity is shown by direct or circumstantial evidence "somewhere in the development of the case. . . ." *State v. Richards*, 294 N.C. 474, 480, 242 S.E. 2d 844, 849 (1978). In the case at bar, there was ample circumstantial evidence that the defendant was, in fact, the caller in question.

III.

[3] Defendant next challenges the court's instruction to the jury that movement of a jewelry box a few feet from the top of a

dresser to beneath a bed would satisfy a necessary element of larceny. We find the instruction proper.

As defendant concedes, movement of even a few inches is sufficient to satisfy the element of asportation to which the court's instruction apparently alluded. *State v. Carswell*, 296 N.C. 101, 249 S.E. 2d 427 (1978). The only remaining element to be satisfied is that of intent *at the time of asportation* to permanently deprive the owner of possession. 8 Strong's N.C. Index 3d, *Larceny* § 1 (1977). Such intent may be ascertained from surrounding circumstances and, absent clear insufficiency of the evidence, is properly a question for the jury.

We have examined defendant's remaining assignments of error and find them to be without merit.

In the trial of the defendant we find

No error.

Judges VAUGHN and WEBB concur.