STATE OF NORTH CAROLINA v. MEDGAR BATTS

No. 884SC486

(Filed 18 April 1989)

**1. Jury § 7.14— peremptory challenges—racial discrimination —no prima facie showing**

The defendant in a prosecution for breaking or entering, rape and sexual offense, robbery with a dangerous weapon, kidnapping, and assault failed to establish a *prima facie* case of purposeful racial discrimination in jury selection by the State's use of peremptory challenges where two of the twelve jurors empaneled to hear the case were black; one of the black jurors peremptorily challenged by the State stated that he had been convicted once for nonsupport and three times

for uttering worthless checks and that his brother was currently charged with manslaughter and represented by counsel for defendant in the instant case; the second black juror peremptorily challenged by the State stated that she knew members of defendant's family and that she once attended school with defendant's brother, that she had formed an opinion about the case from television reports but that she could set her opinion aside, and initially denied being charged with the crime of larceny from the person but recanted her denial upon further questioning by the State.

2. **Criminal Law § 98.2— motion to sequester witnesses—denied—no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for rape, sexual offense, breaking or entering, robbery, kidnapping, and assault by denying defendant's motion to sequester witnesses even though several witnesses were to testify to the same set of facts. N.C.G.S. § 15A-1225.

3. **Constitutional Law § 30— discovery of witnesses' statements—denied—no error**

The trial court did not err in a prosecution for rape, sexual offense, robbery, kidnapping and assault by denying defendant's motion to discover witnesses' statements in advance of their testimony where the trial court afforded defense counsel sufficient time to examine and study these statements and to prepare for cross-examination after the witnesses had testified on direct examination. Defendant did not contend nor did the record show that this procedure prevented counsel from effectively cross-examining witnesses or effectively representing defendant. N.C.G.S. § 15A-903(f)(1).

4. **Criminal Law §§ 66.7, 66.15— in-court identification—not tainted by pretrial photographic identification—not impermissibly suggestive**

The trial court did not err in a prosecution for rape, sexual offense, breaking or entering, robbery, kidnapping, and assault by concluding that the pretrial photographic lineup was not so unnecessarily suggestive and conducive to irreparable mistaken identity as to constitute a denial of due process and that the witness's in-court identification of defendant was of independent origin and was therefore admissible where the victim examined a photographic lineup of twelve photographs,

one of the twelve photographs being a photograph of the defendant; no one made any statement to her or took any action in her presence concerning or indicating the identification of any of the individuals appearing in the twelve photographs; she looked at all twelve photographs and picked out defendant's photograph without hesitation as being that of her assailant; the persons appearing in the photographs were of the same sex and race as defendant and were of substantially the same age, color tone, and hairstyle; none of the persons appearing in the twelve photographs had any remarkable or unique distinguishing facial features or were wearing clothing of such a distinctive nature as to create a difference of perception in the photographs or to make one photograph stand out over any other photograph in the group; defendant never attempted to conceal his face or identity during the time he was in the victim's presence; the defendant and victim were in each other's immediate physical presence over a period of approximately three to four hours; and during this span of time they were in places where the lighting was sufficient for the witness to make memorable observations of defendant.

APPEAL by defendant from *Phillips, Herbert O., III, Judge.* Judgment entered 18 September 1987 in Superior Court, ONSLOW County. Heard in the Court of Appeals 9 January 1989.

Defendant was convicted of five (5) counts of first degree rape, one (1) count of felonious breaking or entering, three (3) counts of first-degree sexual offense, one (1) count of robbery with a dangerous weapon, one (1) count of aggravated kidnapping, and two (2) counts of assault with a deadly weapon with intent to kill inflicting serious injury. From judgments pronounced thereon, defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Julia F. Renfrow, for the State.*

*Timothy E. Merritt and Georgann Geracos for defendant-appellant.*

JOHNSON, Judge.

The State presented evidence which tended to show the following. On 10 March 1987, at about 2:00 a.m., defendant entered a two bedroom apartment occupied by Marianne and her boyfriend

STATE v. BATTS

[93 N.C. App. 404 (1989)]

Roger. The apartment is located in the Brandywood Apartment complex in Jacksonville, North Carolina. Defendant entered through the front door which was closed but left unlocked. The door was left unlocked for Marianne's friend Wanda, who was expected to arrive without her key. Defendant entered the second bedroom of the apartment where Marianne and Roger were sleeping. Defendant sat upon Marianne, straddling her chest and commenced stabbing Roger who was lying beside her. Roger was rendered practically unconscious by the injuries inflicted. Defendant removed Marianne's panties, unzipped his jeans and had vaginal intercourse with her. He then forced her into the first bedroom where he had vaginal intercourse with her three separate times and forced her to commit the act of fellatio upon him. When Marianne tried to get away, he caught her and forced her back into the first bedroom where he tried to choke her. Defendant forced her back into the second bedroom and had vaginal intercourse with her for a fifth time. He forced her into the first bedroom again, had vaginal intercourse with her and again forced her to commit fellatio upon him. All during this time the defendant held the knife in his hand, or had it on the bed next to him.

Defendant then made Marianne dress, took her car keys, Roger's bank cards, and while pointing the knife in her back, took her to her car. He drove her to two banks where he attempted to use the bank cards. After riding around for a while, defendant drove to a wooded area where he had vaginal intercourse with Marianne twice and again forced her to commit fellatio upon him. Defendant also inserted his finger into her anus. Thereafter, defendant drove around for a while, stopped in another wooded area and again had vaginal intercourse with her. He then removed her from the car and told her that he was going to kill her. Defendant stabbed her several times and left her on the ground. Marianne managed to crawl and walk to a nearby highway. A passing motorist saw her, stopped and gave her assistance.

Marianne was in defendant's presence during the series of attacks for approximately three to four hours. She suffered six stab wounds to the left side and back of her chest. Each wound pierced the rib cage, entered the chest cavity causing damage to blood vessels and causing the lung to collapse.

Roger sustained multiple stab wounds over his back, neck, right arm, chest and abdomen. The wound to his abdomen caused

injury to his right kidney and colon; the stab wound to his back lacerated the inferior vena cava artery.

Defendant presented evidence which tended to show that he did not know the victims, and that at the time of the commission of the crimes, he was in bed with his girlfriend Monica McAllister.

[1] Defendant first contends the trial court erred in holding that defendant's right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution had not been violated by the exclusion of members of defendant's race from the petit jury.

Prior to trial, defendant, who is black, raised the issue of purposeful racial discrimination in jury selection by the State by requesting the trial court to prohibit such a practice. During jury selection defendant again raised the issue by objecting to the State's use of two of its peremptory challenges to exclude two potential jurors who were black from the petit jury.

It is well established that purposeful racial discrimination in jury selection, whether it involves the selection of the jury venire, grand jury or petit jury, violates the equal protection clause of the Fourteenth Amendment. *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed. 2d 599 (1967); *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed. 2d 759 (1965); *Avery v. Georgia*, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953); *Norris v. Alabama*, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880). Ordinarily a prosecutor may exercise permitted peremptory challenges for any reason at all, so long as that reason is related to the prosecutor's view concerning the outcome of the case to be tried. However, the equal protection clause of the Fourteenth Amendment prohibits the State from challenging potential jurors solely on the basis of their race or on the assumption that black jurors as a group will be unable to impartially consider the State's case against a member of the black race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986).

In *Batson*, the United States Supreme Court set forth the burden of proof required and the standards for assessing a *prima facie* case of racial exclusion from the jury by the states through the use of peremptory challenges. The Court held that the burden is on the defendant who alleges discriminatory selection of the

jury to establish a *prima facie* case of purposeful discrimination. *Id.* In order to establish such a *prima facie* case the defendant must be a member of a cognizable racial group, and defendant must show that the State has used peremptory challenges to remove from the jury members of defendant's race. The trial court must consider this fact as well as all relevant circumstances in determining whether a *prima facie* case of discrimination has been made. When the trial court determines that a *prima facie* case has been made, the burden then shifts to the State to go forward with a clear and reasonably specific neutral explanation for challenging jurors of the cognizable group which relates to the particular case to be tried; the State's explanation need not rise to the level of justifying a challenge for cause. After the State has offered its explanation, the trial court must then determine if the defendant has established purposeful discrimination. *Id.* The trial court's finding as fact as to whether a defendant has established purposeful discrimination should be accorded great deference. *Id.* The principles of *Batson* were recently applied by our State Supreme Court in *State v. Jackson*, 322 N.C. 251, 368 S.E. 2d 838 (1988).

In determining whether the defendant in the case *sub judice* had established a *prima facie* case, the trial court considered the following evidence in addition to the fact that defendant is a member of a cognizable racial group and that the State used peremptory challenges to excuse two members of defendant's race from the jury: First, that of the twelve jurors empanelled to hear the case, two of the jurors were black. Second, one of the black jurors peremptorily challenged by the State stated that he had been convicted once for nonsupport and three times for uttering worthless checks, and that his brother is currently charged with manslaughter and is represented by counsel for the defendant in the instant case. The second black juror peremptorily challenged by the State stated that she knew members of defendant's family and that she once attended school with defendant's brother; that she has formed an opinion about the instant case based upon television reports, but that she could set her opinion aside; and that she was once charged with the crime of larceny from the person. (This juror initially denied even being charged with the crime of larceny from the person but recanted her denial upon further questioning by the State.)

The trial court also noted and found as fact that "during the course of examination of Jurors [by the State] there did not appear to be any pattern exercised by the prosecutor with respect to

the excuse of black jurors and the questions asked . . . to indicate a plan or purpose on the part of the State to exercise peremptory challenges on the basis of race alone."

The trial court made findings consistent with the evidence and concluded that defendant had failed to establish a *prima facie* case of purposeful discrimination and that the responses of the two black jurors peremptorily challenged by the State "serve as a neutral explanation, a neutral basis for the exercise of a peremptory challenge for the excuse [of the two jurors]."

Upon assessing the evidence supporting the trial court's findings as they relate to this case, and giving the required deference to those findings, we hold that the trial court properly ruled that there was no violation of defendant's right to equal protection of the laws by the State's use of peremptory challenges to exclude the two black jurors.

[2] Defendant next contends the trial court erred in the denial of his motion to sequester witnesses. Defendant argues that where several witnesses are to testify "about the same or similar facts, with the potential for a consensus account of those facts," the trial judge is required to grant the motion to sequester. We disagree.

G.S. sec. 15A-1225 provides that:

Upon motion of a party the judge may order all or some of the witnesses other than the defendant to remain outside of the courtroom until called to testify, except when a minor child is called as a witness the parent or guardian may be present while the child is testifying even though his parent or guardian is to be called subsequently.

A motion to sequester witnesses is addressed to the sound discretion of the trial court, and the court's ruling on the motion will not be disturbed in the absence of a showing of abuse of that discretion. *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976); *State v. Davis*, 290 N.C. 511, 227 S.E. 2d 97 (1976). *See also State v. Harrell*, 67 N.C. App. 57, 64, 312 S.E. 2d 230, 236 (1984), where this Court held that "[d]ue process does not automatically require separation of witnesses who are to testify to the same set of facts." We find no abuse of discretion in the case *sub judice*. Accordingly, this assignment of error is without merit.

STATE v. BATTS

[93 N.C. App. 404 (1989)]

[3] By his next Assignment of Error defendant contends that the trial court erred in denying his motion to discover witnesses' statements in advance of their testimony. The guidelines governing the discovery of witnesses' statements are stated in G.S. sec. 15A-903(f)(1) which provides:

> In any criminal prosecution brought by the State, no statement or report in the possession of the State that was made by a State witness or prospective State witness, other than the defendant, shall be the subject of subpoena, discovery, or inspection until that witness has testified on direct examination in the trial of the case.

Defendant argues that this procedure which requires defendant to wait until after the witness has testified on direct before defendant has access to the statement denies him due process of law and the right to counsel.

No right of discovery in criminal cases existed at common law. *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977). Therefore, questions concerning discovery must be resolved by reference to statutes and due process principles. *State v. McDougald*, 38 N.C. App. 244, 248 S.E. 2d 72 (1978), *disc. rev. denied, appeal dismissed*, 296 N.C. 413, 251 S.E. 2d 472 (1979). Where a statute expressly restricts pretrial discovery, the trial court has no authority to order discovery. *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977); *State v. Miller*, 61 N.C. App. 1, 300 S.E. 2d 431 (1983). "Due process requires that the prosecution not suppress information favorable to an accused upon his request for its production, where the evidence is material either to guilt or punishment." *McDougald, supra*, at 254, 248 S.E. 2d at 81, *citing Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963). *See also United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed. 2d 342 (1976).

The statements defendant sought to discover in the instant case were not suppressed. Therefore, the question of due process does not arise. Upon ruling on defendant's motion, the trial judge stated:

> [C]ounsel [will] have opportunity to see those [statements] after the testimony is offered and counsel will be given adequate opportunity by the Court to review those [statements] over a reasonable period of time to be certain that counsel has a full opportunity to understand the contents of it and to prepare for cross-examinations.

**STATE v. BATTS**

[93 N.C. App. 404 (1989)]

The trial court followed the requirements of G.S. sec. 15A-903(f)(1) in making the witnesses' statements available to the defense after the witnesses had testified on direct. *Hardy, supra.* The court afforded defense counsel sufficient time to examine and study the statements and to prepare for cross-examination. Defendant does not contend nor does the record show that this procedure prevented counsel from effectively cross-examining any witness or from effectively representing defendant. We find no constitutional violations of defendant's rights. This assignment of error is overruled.

[4] Defendant next contends the trial court erred in the denial of his motion to suppress his in-court identification. Defendant suggests that his in-court identification was tainted by a pretrial photographic identification that was impermissibly suggestive and conducive to irreparable misidentification. The trial court, after conducting a voir dire hearing, making findings of fact and conclusions of law, admitted both the pretrial and in-court identifications of defendant by Marianne, the female rape victim.

The admission over defendant's objection at trial of eyewitness identification testimony following a pretrial identification by photograph will be held reversible error only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *State v. Williams*, 308 N.C. 339, 302 S.E. 2d 441 (1983); *State v. Conyers*, 33 N.C. App. 654, 236 S.E. 2d 393 (1977).

Evidence presented at the voir dire hearing showed the following. On 14 March 1987, Marianne examined a photographic lineup consisting of twelve photographs, one of the twelve photographs being a photograph of the defendant. No one made any statement to her or took any action in her presence concerning or indicating the identification of any of the individuals appearing in the twelve photographs. She looked at all twelve photographs and picked out defendant's photograph without hesitation as being that of her assailant. The persons appearing in the photographs were of the same sex and race as the defendant and were of substantially the same age, color tone, and hairstyle. None of the persons appearing in the twelve photographs had any remarkable or unique distinguishing facial features or were wearing clothing of such a distinctive nature as to create a difference of perception in the photographs or to make one photograph stand out over any other photograph in the group.

STATE v. BATTS

[93 N.C. App. 404 (1989)]

The evidence further showed that defendant never attempted to conceal his face or identity during the time he was in the victim's presence; that defendant and Marianne were in each other's immediate physical presence over a period of approximately three to four hours; that during this span of time they were in places where the lighting was sufficient for the witness to make memorable observations of defendant; and that the witness' in-court identification was of independent origin based on her observations of the defendant at the time of the commission of the crimes and was not influenced by the photographic lineup procedure.

The trial court made findings of fact consistent with this evidence and concluded as a matter of law that (1) the pretrial photographic lineup was not so unnecessarily suggestive and conducive to irreparable mistaken identity as to constitute a denial of due process, and (2) that the witness' in-court identification of defendant was of independent origin and was therefore admissible.

The evidence supports the court's findings of fact and the findings of fact support the court's conclusions of law. We find no merit to defendant's contentions.

By his next three Assignments of Error, defendant contends the court erred in its rulings on the admission of various evidence, and by his last Assignment of Error he contends the court erred in the denial of his motion for appropriate relief. We have carefully examined these issues and find each to be without merit and unnecessary for discussion.

Defendant has received a fair trial free of prejudicial error.

No error.

Judges WELLS and BECTON concur.