STATE OF NORTH CAROLINA v. KERMIT ALLEN SELF

No. 91

(Filed 15 March 1972)

1. Criminal Law § 169; Rape § 10— marital status of defendant — evidence admitted over objection — similar evidence admitted without objection

In this prosecution for kidnapping, rape and crime against nature, the admission of testimony to the effect that defendant was married at the time of the alleged offenses was not prejudicial error where defendant thereafter fully explained, without objection, his marital status at the time of the alleged crimes, at the time of his arrest, and at the time of the trial.

2. Criminal Law §§ 102, 128— improper question by solicitor — motion for mistrial

In this prosecution for kidnapping, rape and crime against nature wherein the prosecutrix testified that defendant gained entrance to her home when he appeared at the front door and asked if he could come in and see the layout of the home, the trial court did not err in denying defendant's motion for mistrial after the solicitor asked defendant if he had not tried to gain entrance into a woman's house

in another county by telling her that he was interested in the house and wanted to see the inside thereof, where the court sustained defendant's objection to the question, excused the jury and instructed the solicitor not to ask further questions along that line, and instructed the jury not to consider the question but to strike it from their minds.

**3. Criminal Law § 46— evidence of flight**

An accused's flight from a crime shortly after its commission is admissible as evidence of guilt.

**4. Criminal Law § 46— flight 16 days after crimes — competency**

Evidence that defendant left his home 16 days after the alleged offenses of kidnapping, rape and crime against nature were committed was competent to be considered by the jury in connection with other circumstances in passing upon the question of guilt.

**5. Criminal Law § 46— evidence of flight — instructions — defendant's contention**

In this prosecution for kidnapping, rape and crime against nature, the trial court correctly charged the jury on the effect of evidence of defendant's flight from this State and charged upon defendant's contention that he left the State to prevent his first wife from having him picked up for nonsupport.

APPEAL by defendant from *Snepp, J.,* at the 19 July 1971 Session of CATAWBA Superior Court, docketed and argued as case No. 164, Fall Term 1971.

Defendant was charged in separate bills of indictment with kidnapping, rape, and crime against nature. The cases were consolidated for trial, and defendant entered pleas of not guilty. The jury returned verdicts of guilty as charged in all three cases, with a recommendation of life imprisonment on the rape charge. From the sentence of life imprisonment for rape, and concurrent sentences of 20 years for kidnapping and 10 years for the crime against nature, defendant appealed.

The evidence for the State tends to show: On 2 December 1969 the prosecutrix, Mrs. Linda Howard, her husband, and twelve-year-old son were at their home in Catawba County where they had lived for some eleven years. On that morning about 6:30 Mr. Howard left to go to work, and about 7:30 a.m. their son left for school. At approximately 10 a.m. defendant, whom the prosecutrix had never seen before, appeared at the front door and expressed an interest in the layout of the house. He asked her if he could come in and see the inside. The prosecutrix admitted him. Defendant told the prosecutrix that he

had formerly worked with her husband. After some further conversation, defendant produced a knife, threatened to kill her if she screamed, dragged her out of the house, and forced her to get into his white station wagon. Defendant drove away from the prosecutrix' home and while driving forced the prosecutrix to partially disrobe and perform oral intercourse on him. Later defendant stopped at a secluded spot, forced the prosecutrix to remove her remaining clothes, blindfolded her, and made her walk across a field to an old abandoned house. After staying there for a short time, defendant dragged the prosecutrix back to the station wagon, put her in the rear portion of the vehicle, and forced her to commit both natural and unnatural acts of intercourse. Defendant several times threatened the prosecutrix' life unless she cooperated, and at no time did she consent to these natural and unnatural acts. Defendant then drove the prosecutrix to a point near her home where he released her. He told her he had a gun and if she looked back he would blow her head off. She walked home and immediately called her mother-in-law who lived nearby and the police.

Dr. Joseph Cutchins examined the prosecutrix about 6:30 p.m. on 2 December 1969 and found bruises on her neck and numerous scratches on her legs.

That night the prosecutrix made a formal statement to Sergeant Virgil Eller of the Catawba County Sheriff's Department and gave him a detailed account as to what had occurred and a description of the defendant and his car. Sergeant Eller later saw a car like the one described by the prosecutrix and learned that it was registered in Forsyth County in defendant's name. Sergeant Eller drove to the residence listed for defendant —a trailer park—where he found the car parked. Eller knocked on the door of the trailer, and defendant came to the door. Eller did not have a warrant for defendant at that time and, after some conversation with defendant, left without identifying himself as an officer. Two hours later he and two other officers returned to the trailer with a warrant for defendant's arrest, but defendant was gone.

Jackie Lowman, a neighbor of the prosecutrix, was driving out of his driveway about 6:30 a.m. on 2 December 1969 and almost collided with a white station wagon parked at the end of his driveway with the lights off. Lowman identified defendant as the driver of this car.

Defendant testified in his own behalf. His testimony tends to show that on the date in question he did go to the home of the prosecutrix and that she accompanied him to a secluded spot where they drank whiskey and engaged in natural and unnatural intercourse for some three hours; that at no time did defendant threaten the prosecutrix' life or commit any acts of intercourse against her will, but to the contrary the prosecutrix left her home and went with him willingly and consented completely to all the acts of intercourse in which they engaged. Defendant's testimony further tends to show that he first met the prosecutrix at a local drive-in restaurant in 1961 and that he had visited her at her home on about ten occasions since that time; that on his last visit, shortly before 2 December 1969, she kissed him and instructed him to bring some whiskey the next time, that they would have "to go and do something."

Defendant's testimony further tends to show that on 17 December 1969 he received a phone call from his first wife who said that she was going to have him picked up because he was three weeks behind in his support payments, and that the next day when Sergeant Eller came to his trailer he assumed it was in regard to these payments. He then took his four daughters to live with Mr. Dewey Armstrong and told Mr. Armstrong that the police were after him, and for him not to tell them where he had gone. In April of 1970 defendant established a residence in Riviera Beach, Florida, and in August of the same year was arrested there.

At the conclusion of the defendant's evidence, the State offered testimony of four local residents whose testimony tends to show that the reputation of the prosecutrix in the community in which she lives is good.

*Attorney General Robert Morgan, Special Counsel Ralph Moody, and Deputy Attorney General Andrew A. Vanore, Jr., for the State.*

*John S. Freeman and H. Edward Knox for defendant appellant. Of counsel: Wardlow, Knox, Caudle & Knox*

MOORE, Justice.

[1] Defendant contends that the court erred in admitting testimony to the effect that defendant was married at the time of the alleged offenses. Defendant testified without objection that

he was married, that he had four daughters and had had two wives, that his present wife Louise was in the courtroom at the trial. When asked if this was the same lady he was married to on 2 December 1969, defendant objected. The objection was overruled and he answered, "No." Defendant then testified that he was working for his present wife when he was arrested in August 1970 and that he married his present wife on 20 January 1971. Over objection, he further testified that when he was arrested he was still married to his wife in Winston-Salem. Defendant then further testified without objection that "when I was arrested I was going by the name of Bill Miller. As to why I had gone to Florida and take up the assumed name of Bill Miller, my first wife had called me on December 17. I had been out of work several months with an operation. I had to give up truck driving after 18 years. On December 17, my wife called me up and said she was going to have me picked up because I was three weeks late on the support payment." Thus, defendant fully explained, without objection, his marital status at the time of the alleged crime, at the time of his arrest, and at the time of his trial.

In *State v. McDaniel,* 272 N.C. 556, 563, 158 S.E. 2d 874, 881 (1968), Justice Lake quotes with approval from *State v. Adams,* 245 N.C. 344, 95 S.E. 2d 902 (1957) :

" 'Exceptions by the defendant to evidence of a State's witness will not be sustained where the defendant or his witness testifies, without objection, to substantially the same facts. *State v. Matheson,* 225 N.C. 109, 33 S.E. 2d 590.

" 'Likewise, the admission of evidence as to facts which the defendant admitted in his own testimony, cannot be held prejudicial. *State v. Merritt,* 231 N.C. 59, 55 S.E. 2d 804.'

"The rule so stated is well established in this and other jurisdictions. [Citing authority.]"

This assignment is overruled.

[2]   Defendant next contends the court erred in allowing testimony as to a separate unrelated offense in another county and in denying defendant's motion for mistrial with regard thereto. This assignment is based upon the following proceedings:

State v. Self

"Q. Well, I ask you Mr. Self, if you didn't go over to Stokes County and go to a woman's door and. . .

"MR. KNOX: Objection your Honor.

"COURT: He has not finished the question.

"MR. KNOX: Your Honor. . .

"Q. . . . and knocked on the door and tell this woman that you liked the house. . .

"MR. KNOX: Objection.

"COURT: Let him finish the question.

"MR. KNOX: He knows it is improper question.

"COURT: I don't know, I have not heard it.

"MR. KNOX: I ask you to excuse the jury and let him ask it.

"COURT: Objection is overruled.

EXCEPTION No. 18

"Q. Now, Mr. Self, I ask you if you didn't go over to Stokes County to a woman's house and knock on the door and tell her that you were interested in her house and that you wanted to see the inside of the house to try to gain entrance into the house?

"MR. KNOX: Objection.

"MR. GORDON: Objection.

"COURT: Sustained.

"MR. KNOX: Move to strike it.

"COURT: You will not consider the question.

"MR. KNOX: I would like to make a motion your Honor, please. Your Honor would you hear me on a motion at this time?

"COURT: Let the jury go out.

(The jury was removed from the courtroom.)

"MR. KNOX: At the conclusion of the question of the defendant, the defendant moves for a mistrial on the ground

that the question was highly prejudicial and was improper and is impossible for the defendant to get a fair and impartial trial before this jury now. The solicitor knows. . .

"COURT: I will deny your motion. I don't know of any evidence of that in this case. I told the jury to disregard it and the motion for a mistrial is denied. Bring the jury back.

EXCEPTION NO. 19

"COURT: Ask no further questions on that.

"MR. GREENE: I want to ask. . .

"COURT: You heard me Mr. Solicitor.

"MR. GREENE: About a particular. . .

"COURT: You heard me Mr. Solicitor.

"MR. GREENE: Yes, sir.

(The jury was returned into open court.)

"COURT: Members of the jury you will not take into consideration the last question asked by the solicitor. You will strike that from your minds."

Defendant admits that the objection to the challenged question was sustained by the court and that the jury was instructed not to consider the question. Defendant contends, however, that the import of the question was apparent before the question was completed, that the jury should have been excused so that the court could have ruled on the completed question in the absence of the jury, and that the question itself left an impression upon the minds of the jurors which could not be erased by the court's instruction. We hold, however, that the court's prompt action in sustaining defendant's objection to the question and in excusing the jury and instructing the solicitor not to ask further questions along that line, coupled with the court's specific instruction to the jury not to consider the question but to strike it from their mind, was sufficient to remove any possibility of error.

In *State v. Moore*, 276 N.C. 142, 149, 171 S.E. 2d 453, 458 (1970), Justice Sharp quoted with approval from *State v. Ray*, 212 N.C. 725, 729, 194 S.E. 482, 484 (1938):

" . . . '[O]ur system for the administration of justice through trial by jury is based upon the assumption that the trial jurors are men of character and of sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so. *Wilson v. Mfg. Co.*, 120 N.C. 94, 26 S.E. 629.' Accord, *State v. Bruce*, 268 N.C. 174, 150 S.E. 2d 216; 2 Strong, N. C. Index 2d Criminal Law § 96 (1967)."

This assignment is without merit.

Defendant next assigns as error the admission of testimony as to defendant's leaving the State of North Carolina. Defendant contends that the record indicates that he left Winston-Salem on 18 December 1969, sixteen days after the commission of the alleged crime, and that the record is silent as to when he left North Carolina except that it does show he established residence in Florida in April 1970. Defendant contends that such a lapse of time renders the relationship between his departure and any supposed consciousness of guilt too remote for the evidence to be considered by the jury.

[3] North Carolina has long followed the rule that an accused's flight from a crime shortly after its commission is admissible as evidence of guilt. See *State v. Sheffield*, 251 N.C. 309, 111 S.E. 2d 195 (1959); *State v. Dickerson*, 189 N.C. 327, 127 S.E. 256 (1925); *State v. Hairston*, 182 N.C. 851, 109 S.E. 45 (1921); *State v. Nat*, 51 N.C. 114 (1858). The State contends that the fact defendant left his home immediately after being questioned by Sergeant Eller, that he left his children with Mr. Dewey Armstrong in Winston-Salem and told Mr. Armstrong not to tell the officers where he had gone, and that months later defendant was found living in Florida under an assumed name, were all circumstances for the jury to consider.

In *State v. Ball*, 339 S.W. 2d 783 (Mo. 1960), cited by the defendant in his brief, it was held that flight occurring approximately three weeks after the crime was a relevant circumstance and that the remoteness of the flight goes only to the weight not the admissibility of the evidence. See 29 Am. Jur. 2d, Evidence § 280; Annot., 25 A.L.R. 886 (1923).

[4] In the present case, evidence that defendant left his home 16 days after the alleged offenses were committed is competent to be considered by the jury in connection with other circum-

stances in passing upon the question of guilt. *State v. Payne,* 213 N.C. 719, 197 S.E. 573 (1938), and cases therein cited.

**[5]** Finally, defendant's sixth assignment of error states: "The Court erred in failing to state defendant's contention and declare and explain the applicable law, with regard to the defendant's leaving the State of North Carolina. Defendant's exception No. 23 (R p 77)."

This assignment could be dismissed for failure to comply with the rule stated in *State v. Kirby,* 276 N.C. 123, 131, 171 S.E. 2d 416, 422 (1970), as follows:

"Assignments of error to the charge should quote the portion of the charge to which appellant objects, and assignments based on failure to charge should set out appellant's contention as to what the court should have charged. *State v. Wilson,* 263 N.C. 533, 139 S.E. 2d 736. 'When an exception relates to the charge, that portion to which the exception is taken must be set out in the particular assignment of error. A mere reference to the exception number and the page number of the record where the exception appears . . . will not present the alleged error for review. . . .' *Samuel v. Evans* and *Cooper v. Evans,* 264 N.C. 393, 141 S.E. 2d 627."

However, an examination of the record in the case at bar discloses that the court correctly charged the jury:

"Now ladies and gentlemen of the jury, the State has introduced evidence which tends to show that the defendant fled this jurisdiction. I instruct you that evidence of flight may be considered by you together with all the other facts and circumstances in this case in determining whether the combined circumstances amount to admission or shows a consciousness of guilt, however, I instruct you the proof of this circumstance is not sufficient in itself to establish the defendant's guilt of any of these offenses."

The record further discloses that the court stated that defendant contends he left the State to prevent his first wife from having him picked up for nonsupport. If defendant wished the court to give additional contentions, it was his duty to request them. *State v. Butler,* 269 N.C. 733, 153 S.E. 2d 477 (1967); 3 Strong, N. C. Index 2d, Criminal Law § 163.

Nothing appears in the record which would warrant disturbing the verdicts or the judgments. They will therefore be upheld.

No error.