STATE v. HARRIS

[111 N.C. App. 58 (1993)]

STATE OF NORTH CAROLINA v. WALTER M. HARRIS

No. 914SC1032

(Filed 20 July 1993)

1. **Evidence and Witnesses § 1252 (NCI4th)— Sixth Amendment right to counsel—right offense specific—subsequent interrogation as to different offense—assertion of right in earlier case inapplicable to interrogation**

    Invocation of the right to counsel under the Sixth Amendment acts only to prevent subsequent interrogation of a defendant on the same offense for which he has invoked his right to counsel; however, it does not work to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached. As a result, any subsequent waiver of the right to counsel during a police initiated interrogation is invalid *only* as to questioning on the same offense for which judicial proceedings have begun and for which the defendant has asserted his right to counsel.

    **Am Jur 2d, Criminal Law §§ 788 et seq.; Evidence §§ 555-557, 614.**

    **Requirement, under Federal Constitution, that law enforcement officers' custodial interrogation of suspect cease after suspect requests assistance of counsel—Supreme Court cases. 83 L. Ed. 2d 1087.**

    **What constitutes assertion of right to counsel following Miranda warnings—state cases. 83 ALR4th 443.**

2. **Evidence and Witnesses § 1252 (NCI4th)— Fifth Amendment right to counsel—right not offense specific**

    The Fifth Amendment requires a criminal suspect to be informed of his rights prior to a custodial interrogation by law enforcement officers, and, unlike the Sixth Amendment right to counsel, the Fifth Amendment right is not offense specific, that is, once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present.

    **Am Jur 2d, Criminal Law §§ 788 et seq.; Evidence §§ 555-557, 614.**

**STATE v. HARRIS**

[111 N.C. App. 58 (1993)]

Requirement, under Federal Constitution, that law enforcement officers' custodial interrogation of suspect cease after suspect requests assistance of counsel—Supreme Court cases. 83 L. Ed. 2d 1087.

What constitutes assertion of right to counsel following Miranda warnings—state cases. 83 ALR4th 443.

3. **Evidence and Witnesses § 1252 (NCI4th)— Sixth Amendment right to counsel invoked in one case—no effect on interrogation in subsequent case**

Defendant did not invoke his Fifth Amendment right to counsel rather than, or independent of, any Sixth Amendment invocation of his right to counsel, though defendant was in custody, since the record contained no evidence that his request for appointed counsel was related to any active interrogation or any expectation or fear of an impending interrogation; rather the evidence tended to show that his request for counsel was nothing more than the expression of a desire to have counsel present at formal proceedings in an earlier, independent case.

Am Jur 2d, Criminal Law §§ 788 et seq.; Evidence §§ 555-557, 614.

Requirement, under Federal Constitution, that law enforcement officers' custodial interrogation of suspect cease after suspect requests assistance of counsel—Supreme Court cases. 83 L. Ed. 2d 1087.

What constitutes assertion of right to counsel following Miranda warnings—state cases. 83 ALR4th 443.

4. **Evidence and Witnesses § 1262 (NCI4th)— inculpatory statement made in custody—defendant advised of rights—voluntary waiver—statement not suppressed—no error**

The trial court did not err in denying defendant's motion to suppress his inculpatory statement made to a detective while he was in custody where the detective advised defendant of his *Miranda* rights; defendant acknowledged each right by saying he understood it, did not want an attorney present, and was willing to talk without an attorney present; and defendant therefore knowingly and voluntarily waived his Fifth

Amendment right to have counsel present during the custodial interrogation.

**Am Jur 2d, Criminal Law §§ 788 et seq.; Evidence §§ 555-557, 614.**

**Requirement, under Federal Constitution, that law enforcement officers' custodial interrogation of suspect cease after suspect requests assistance of counsel — Supreme Court cases. 83 L. Ed. 2d 1087.**

**What constitutes assertion of right to counsel following Miranda warnings — state cases. 83 ALR4th 443.**

5. **Constitutional Law §§ 262, 352 (NCI4th) — right to counsel — right against self-incrimination — North Carolina Constitution not broader than U. S. Constitution**

Article I, § 23 of the North Carolina Constitution does not provide broader protection than the U. S. Constitution with regard to a defendant's right to counsel and right not to be compelled to give self-incriminating evidence.

**Am Jur 2d, Criminal Law §§ 701 et seq., 936 et seq., 967 et seq.**

6. **Constitutional Law § 367 (NCI4th) — one aggravating factor — consecutive, maximum sentences — no cruel and unusual punishment**

The trial court's imposition of consecutive maximum sentences for armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury, based upon a finding of the aggravating factor that defendant had a prior conviction punishable by more than sixty days imprisonment, did not constitute cruel and unusual punishment in violation of the Eighth Amendment because the prior conviction was for disorderly conduct, since defendant was convicted of two serious crimes, both involving the use of deadly weapons; it was within the trial court's discretion to impose the maximum sentence for those offenses; the imposition of consecutive maximum terms did not, standing alone, constitute cruel and unusual punishment; and there was nothing so grossly disproportionate in the sentencing judgment for the offenses to represent a cruel or unusual punishment in North Carolina.

**Am Jur 2d, Criminal Law § 629.**

STATE v. HARRIS

[111 N.C. App. 58 (1993)]

**Federal Constitutional guaranty against cruel and unusual punishment — Supreme Court cases. 33 L. Ed. 2d 932.**

**Length of sentence as violation of constitutional provisions prohibiting cruel and unusual punishment. 33 ALR3d 335.**

Appeal by defendant from judgments entered 14 May 1991 by Judge Frank R. Brown in Onslow County Superior Court. Heard in the Court of Appeals 10 June 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Elizabeth N. Strickland for the State-appellee.*

*Raynor and Fisher, by Donald G. Walton, Jr. for defendant-appellant.*

WYNN, Judge.

Defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury and for robbery with a dangerous weapon. The two charges were consolidated for trial and heard on 14 May 1991.

The State's evidence tended to show the following: On the evening of 1 November 1990 at about midnight, a man entered a Circle K store in Jacksonville, North Carolina wearing a mask and carrying a handgun. He ordered the clerk, Jeffrey Dean Cornish, to give him "the money in the till" and then to get down on the floor. Mr. Cornish gave him the eight dollars in the register and began moving toward the floor. The man struck Mr. Cornish on the head with the butt of the gun. After Mr. Cornish got on the floor, the gun went off, inflicting a wound in his upper right chest area. The robber ran out of the store. Law enforcement officials investigating the robbery did not find the robber nor any evidence in the area.

On 7 November 1990 defendant was arrested at his home by Detective Dennis Donita of the Jacksonville Police Department for the armed robbery of a Fast Fare store in Jacksonville which had occurred on 17 September 1990 (a case unrelated to the subject appeal). Defendant was taken to the police station where he was read his *Miranda* rights and after signing a waiver of rights form, was questioned about the Fast Fare robbery by Detective Donita. Defendant denied guilt. On 8 November 1990, defendant went before

the Onslow County District Court for a first appearance on the Fast Fare charges. He declined appointed counsel and stated that he would hire his own attorney. Defendant was returned to the Onslow County jail. Pursuant to a subsequent request by defendant, on the morning of 9 November 1990, defendant was appointed counsel to represent him on the charges relating to the Fast Fare robbery.

Later in the afternoon on 9 November 1990, Detective James V. O'Malley of the Onslow County Sheriff's Department, having learned that defendant was in custody, went to the Onslow County jail and requested that defendant be brought to speak with him. Detective O'Malley was investigating the 1 November 1990 robbery of the Circle K store, for which defendant was a suspect. Detective O'Malley asked defendant if he would speak with him in his office and defendant agreed. Once in O'Malley's office, defendant was read his *Miranda* rights, he signed a waiver of counsel and rights form and agreed to talk with Detective O'Malley about other robberies that were under investigation in Onslow County, including the Circle K robbery. After making an oral statement incriminating himself in the Circle K robbery, defendant made a written statement to the same effect. During the course of the approximately two-and-a-half hours that defendant was in O'Malley's office, Detective O'Malley never asked defendant if he was represented by counsel and defendant never voluntarily offered such information. After questioning, defendant was arrested and charged with assault with a deadly weapon with intent to kill and robbery with a deadly weapon in connection with the 1 November 1990 Circle K robbery.

On 2 January 1991, Winston Grant, a jailer at the Onslow County Sheriff's Department, escorted defendant from the jail to the hospital for treatment of self-inflicted cuts on defendant's wrist. Defendant apparently overheard Mr. Grant tell hospital staff that the defendant was a dangerous person. Mr. Grant testified that defendant later questioned him as to why he had made the comment and Grant answered, "It's my understanding that you shot somebody down at the Circle K." Defendant responded, "I shot the clerk; it wasn't for the money, it was just for the thrill of watching him die." Mr. Grant had not read the defendant his *Miranda* rights.

Defendant did not present any evidence. Defendant moved to suppress the incriminating statements made to both Detective

**STATE v. HARRIS**

[111 N.C. App. 58 (1993)]

O'Malley and Mr. Grant. Pursuant to defendant's motion, the trial court conducted *voir dire* hearings to determine the admissibility of the statements and denied the motion with respect to the statement made to O'Malley but granted the motion with respect to the statement to Grant. The jury found defendant guilty of both charges and the trial judge entered judgment on the verdicts, sentencing defendant to 20 years imprisonment on the "assault with a deadly weapon" charge and 40 years imprisonment on the "robbery with a dangerous weapon" charge, both to run consecutively. Defendant appeals.

## I.

Defendant first assigns error to the trial court's denial of his motion to suppress his inculpatory statement made to Detective O'Malley. He contends that because counsel had been appointed to represent him, the custodial interrogation by Detective O'Malley violated his federal and state constitutional rights. We address the following issues in the resolution of defendant's argument: 1) Does the invocation of the Sixth Amendment right to counsel act to automatically invoke the right to counsel guaranteed under the Fifth Amendment? 2) Did the defendant validly invoke his Fifth Amendment right to counsel independent of his Sixth Amendment invocation of the right to counsel?

[1] Defendant first argues that he invoked his Sixth Amendment right to counsel by requesting a court-appointed attorney in relation to the Fast Fare charges. He contends that the invocation of his Sixth Amendment right to counsel essentially acted to invoke his Fifth Amendment right to counsel as well, which was subsequently violated when he was questioned by Detective O'Malley in the absence of counsel.

In support of this proposition defendant relies upon the United States Supreme Court's holding in *Michigan v. Jackson*, 475 U.S. 625, 89 L.Ed.2d 631 (1986). In *Jackson*, the defendant requested appointment of counsel at his arraignment hearing on murder charges. Before defendant had an opportunity to consult with counsel, police officers approached the defendant, advised him of his *Miranda* rights, questioned him and obtained a confession to the murder. The United States Supreme Court held that the confessions were improperly obtained in violation of the Sixth Amendment. Under *Jackson*, "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel,

any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 636, 89 L.Ed.2d at 642. *See also State v. Bromfield*, 332 N.C. 24, 40, 418 S.E.2d 491, 499 (1992). Thus, defendant in this case contends that his request, pursuant to the Sixth Amendment, for appointed counsel on the Fast Fare charges operated to preclude the subsequent police-initiated interrogation regarding the Circle K robbery, without an attorney present.

Notwithstanding our agreement that defendant presents a persuasive argument in light of *Jackson*, we are constrained by the more recent pronouncement of the United States Supreme Court in *McNeil v. Wisconsin*, 501 U.S. ---, 115 L.Ed.2d 158 (1991) wherein the Court rejected the argument that a defendant's assertion of his Sixth Amendment right to counsel automatically results in an invocation of the right to counsel for Fifth Amendment purposes. *McNeil*, 501 U.S. at ---, 115 L.Ed.2d at 166-69. The Supreme Court's holding limited the *Jackson* ruling by declaring that a defendant's right to counsel under the Sixth Amendment is "offense specific." *Id.* at ---, 115 L.Ed.2d at 166. As a result, "it cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced." *Id.*

The facts in *McNeil* are strikingly similar to the facts of this case. In *McNeil*, the defendant had been arrested and charged with an armed robbery in West Allis, Wisconsin. At his initial appearance on that charge he was represented by a public defender. Later, while in jail on the West Allis charge, he was questioned by police about an unrelated murder in Caledonia. After being advised of his *Miranda* rights and signing forms waiving them, the defendant made statements incriminating himself in the Caledonia murder, for which he was later charged. His pre-trial motion to suppress the statements about the murder was denied and he was subsequently convicted. As in this case, the defendant in *McNeil* argued that "although he expressly waived his *Miranda* right to counsel on every occasion he was interrogated, those waivers were the invalid product of impermissible approaches, because his prior invocation of the offense-specific Sixth Amendment right with regard to the West Allis burglary was also an invocation of the non-offense-specific *Miranda-Edwards* right." *McNeil*, 501 U.S. at ---, 115 L.Ed.2d at 168. The Supreme Court concluded that "[t]o invoke the Sixth Amendment interest is, as a matter of *fact, not* to invoke the *Miranda-Edwards* interest." *Id.*

STATE v. HARRIS

[111 N.C. App. 58 (1993)]

It is well-settled that a criminal defendant's right to counsel under the Sixth Amendment attaches upon the initiation of criminal judicial proceedings, be that " 'by way of formal charge, preliminary hearing, indictment, information or arraignment.' " *State v. Bauguss,* 310 N.C. 259, 267, 311 S.E.2d 248, 253, *cert. denied,* 469 U.S. 838, 83 L.Ed.2d 76 (1984) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 32 L.Ed.2d 411, 417 (1972)); *see also State v. Nations,* 319 N.C. 318, 324, 354 S.E.2d 510, 513 (1987). The purpose of the Sixth Amendment is to " 'protect the unaided layman at critical confrontations' with his 'expert adversary,' the government, *after* 'the adverse positions of [both parties] have solidified' with respect to a particular alleged crime." *McNeil,* 501 U.S. at ---, 115 L.Ed.2d at 168.

Recognizing that purpose, the Supreme Court in *McNeil* reasoned that just as the Sixth Amendment right to counsel is "offense specific," so too is its "effect of invalidating subsequent waivers in police-initiated interviews . . . offense-specific." *Id.* at ---, 115 L.Ed.2d at 167. Thus, invocation of the right to counsel under the Sixth Amendment acts only to prevent subsequent interrogation of a defendant on the *same offense* for which he has invoked his right to counsel. *See Jackson,* 475 U.S. 625, 89 L.Ed.2d 631. *See also State v. Tucker,* 331 N.C. 12, 34, 414 S.E.2d 548, 561 (1992). However, it does not work to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached. As a result, under the rule in *McNeil,* any subsequent waiver of the right to counsel during a police-initiated interrogation is invalid *only* as to questioning on the *same offense* for which judicial proceedings have begun and for which the defendant has asserted his right to counsel.

[2] The Supreme Court in *McNeil* pointed out the differing effect of invoking the Fifth Amendment right to counsel as opposed to the Sixth Amendment right to counsel. The Fifth Amendment to the United States Constitution requires a criminal suspect to be informed of his rights prior to a custodial interrogation by law enforcement officers. *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694 (1966). Under the Fifth Amendment, once a suspected criminal who is the subject of custodial interrogation invokes his right to counsel, the interrogation must cease until counsel is provided, unless the suspected criminal initiates further dialogue. *Edwards v. Arizona,* 451 U.S. 477, 484-85, 68 L.Ed.2d 378, 386 (1981). Unlike the Sixth Amendment right to counsel, the *Edwards* rule "is *not* offense-specific: once a suspect invokes the *Miranda* right to counsel

for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present." *McNeil*, 501 U.S. at ---, 115 L.Ed.2d at 168 (citing *Arizona v. Roberson*, 486 U.S. 675, 100 L.Ed.2d 704 (1988)). *Any* waiver thereafter obtained from the defendant is deemed invalid when the subsequent questioning is police-initiated and without counsel present, even if defendant is read his rights. *Id*. It does not matter "whether the subsequent police-initiated contact is conducted in good faith by officers unaware that the defendant had previously invoked her [Fifth Amendment] right to counsel." *State v. Torres*, 330 N.C. 517, 524, 412 S.E.2d 20, 24 (1992) (citing *Roberson*, 486 U.S. at 687-88, 100 L.Ed.2d at 717).

In this case, defendant argues that by his request for counsel he had invoked his Sixth Amendment right to counsel with respect to the Fast Fare robbery for which he had been formally charged and provided a first appearance. Indeed the record supports the defendant's contention that his Sixth Amendment right to counsel had attached and that he validly invoked such right by requesting and receiving appointed counsel to represent him in that action. However, at the time Officer O'Malley questioned defendant as to the Circle K armed robbery, he was merely a suspect and the State had not initiated judicial proceedings against him with respect to that crime. It is therefore undeniable that defendant's Sixth Amendment right to counsel had not attached with respect to the Circle K robbery. "Because [defendant] provided the statements at issue here before his Sixth Amendment right to counsel with respect to the [*Caledonia*] *offenses* had been (or even could have been) invoked, that right poses no bar to the admission of the statements in this case." *McNeil*, 501 U.S. at ---, 115 L.Ed.2d at 167.

[3] Having determined that by invoking his Sixth Amendment rights, defendant did not thereby, as a matter of course, invoke his Fifth Amendment rights, there remains the issue of whether in fact the record nonetheless shows that defendant invoked his Fifth Amendment right to counsel rather than, or independent of, any Sixth Amendment invocation of his right to counsel.

The record indicates that, at his first appearance on the Fast Fare charges, defendant stated that he would provide his own attorney. Apparently, after returning to his jail cell, he decided that he would prefer a court-appointed attorney and stated that preference. Whereas defendant was in jail, he was without question

STATE v. HARRIS

[111 N.C. App. 58 (1993)]

"in custody" at the time he made a request for appointed counsel. The record does not indicate, however, that he was the subject of "interrogation" at the time of his request. The purpose of *Miranda* rights is to "counteract the 'inherently compelling pressures' of custodial interrogation." *Torres*, 330 N.C. at 523, 412 S.E.2d at 23 (quoting *McNeil*, 501 U.S. at ---, 115 L.Ed.2d at 167). Although we recognize that a person need not be "actively under interrogation" for the *Miranda* protections to apply, there should be, at a minimum, some indication of "a desire to have the help of an attorney during custodial interrogation." *Id.* at 528, 412 S.E.2d at 26 (defendant in custody and awaiting interrogation, could anticipatorily invoke her *Miranda* rights). In determining whether a person has invoked her Fifth Amendment "right to counsel, therefore, a court must look not only at the words spoken, but the context in which they are spoken as well." *Id.* "For a request for counsel at a judicial proceeding [or thereafter] to serve as a Fifth Amendment invocation as well, there must be an indication of a desire to deal with the police only through counsel, not merely the expression of a desire to have counsel present at formal proceedings." *Tucker*, 331 N.C. at 34, 414 S.E.2d at 561 (citing *McNeil*, 501 U.S. at ---, 115 L.Ed.2d at 169).

Although the defendant was in custody, the record contains neither evidence that his request for appointed counsel was related to any active interrogation, nor any expectation or fear of an impending interrogation. Rather, the evidence tends to show that his request for counsel was nothing more than the "expression of a desire to have counsel present at formal proceedings." *Id.* The record being woefully devoid of any evidence indicating why counsel was appointed for defendant, we are thus without sufficient evidence in this case pointing to an assertion of the Fifth Amendment right to counsel.

Based upon the foregoing, we conclude that the record indicates that the defendant invoked his Sixth Amendment right to counsel rather than his Fifth Amendment right to counsel. We further conclude in light of *McNeil*, that the defendant's invocation of his Sixth Amendment right to counsel with respect to his charges for robbery of the Fast Fare did not act as an automatic invocation of his Fifth nor Sixth Amendment right to counsel with respect to the charges on the subject Circle K robbery.

[4] Having determined that the record does not establish that defendant invoked his Fifth Amendment right to counsel when

STATE v. HARRIS

[111 N.C. App. 58 (1993)]

he requested appointment of an attorney, and thus that the *Edwards* rule regarding the invocation of the Fifth Amendment counsel rights is inapplicable, our next inquiry is whether under the totality of the circumstances, the defendant's statement to Detective O'Malley was the result of a voluntary, knowing and intelligent waiver of his Fifth Amendment rights. *State v. Reese*, 319 N.C. 110, 127, 353 S.E.2d 352, 361 (1987).[1] The effective waiver of the right to counsel is a prerequisite to the admissibility of any statement made by a defendant during a custodial investigation. *Miranda*, 384 U.S. 436, 16 L.Ed.2d 694.

Following *voir dire* to determine the admissibility of the statement made to Detective O'Malley, the trial judge made the following pertinent findings of fact:

> That the officer advised the defendant of his *Miranda* rights, and the defendant acknowledged each right by saying he understood it and said that he did not want an attorney and was willing to talk without an attorney being present. That the defendant was extremely cooperative and had to be cautioned not to make any statement until he had been advised of his rights. That the defendant was not handcuffed. That other officers came in and out of the room during the interview. That the defendant was not intoxicated and did not appear confused. That he never asked to be allowed to call an attorney nor did he ask for an attorney. That his mother was allowed to visit him while he was in O'Malley's office. That the officer never made any statement to the defendant regarding a reduction in prison time or regarding the arrest of his mother. That the defendant made an oral statement regarding the incident under investigation herein and thereafter made a written statement, and that the defendant was with the officer approximately one-and-a-half to one-and-three-quarter hours.

Based on these findings, the trial court denied defendant's motion to suppress, concluding:

---

1. In his brief, defendant does not argue that his statement was given involuntarily or unintelligently, nor does he specifically assign error to the trial court's findings and conclusions with respect thereto. However, in the interest of justice we have reviewed the record to determine whether the statement was in fact the result of an intelligent and knowing waiver of defendant's *Miranda* rights during a custodial interrogation.

**STATE v. HARRIS**

[111 N.C. App. 58 (1993)]

1. [T]hat there were no threats or promises to the defendant to persuade him to make a statement.

2. That no offers of hope, reward or inducement were made to the defendant to persuade him to make a statement.

3. That the defendant was fully advised of his constitutional rights pursuant to Miranda and formally made a statement while fully understanding his right to remain silent, to stop answering questions at any time, and to have counsel present to advise him.

4. That the defendant's invocation of his right to counsel on the unrelated charge for which he was arrested on November 7, 1990 [was] not an invocation of his right to have counsel present when questioned about the robbery and assault under investigation here.

The trial court's findings of fact concerning the admissibility of an inculpatory statement are binding and conclusive on the appellate courts when supported by competent evidence. *State v. Simpson*, 314 N.C. 359, 368, 334 S.E.2d 53, 59 (1985) (citations omitted). The conclusions drawn therefrom however, are not binding and are reviewable. *Id.*

Competent evidence supports the trial judge's finding that Detective O'Malley "advised the defendant of his *Miranda* rights, and the defendant acknowledged each right by saying he understood it and said that he did not want an attorney and was willing to talk without an attorney present." It is evident from the findings of fact summarized above that the defendant fully understood his constitutional rights and the written waiver of those rights which he signed. During the interrogation by O'Malley, defendant, with full knowledge of his Fifth Amendment rights, chose not to invoke them. The trial court's conclusions are based upon and supported by findings of fact that are well supported by the *voir dire* testimony. Whereas the defendant did knowingly and voluntarily waive his Fifth Amendment right to have counsel present during the custodial interrogation by Detective O'Malley, the trial court did not err in denying the defendant's motion to suppress the statement made to Detective O'Malley.

[5] In his final argument regarding his right to counsel, defendant asserts that his rights pursuant to Article 1, Section 23 of the North Carolina State Constitution were violated. That provision

provides that "every person charged with a crime has the right to have counsel for defense and not be compelled to give self-incriminating evidence." N.C. Const. art. 1, § 23. Defendant has suggested that even if we decide, as we have, that his statement should not be suppressed based on the pertinent amendments to the United States Constitution, our State Constitution may be read to provide broader protection than that afforded by the United States Constitution. We recognize that our State Constitution has on occasion been read to provide broader rights than those required by the United States Constitution. *See State v. Carter*, 322 N.C. 709, 370 S.E.2d 553 (1988) (N.C. Supreme Court refused to adopt good faith exception to illegal searches and seizure). However, defendant has cited no authority, and we have found none, wherein our Courts have elected to address these issues under Article 1, Section 23. *But see Torres*, 330 N.C. at 531, 412 S.E.2d at 28 (Justice Martin's concurring opinion adopts the Fifth Amendment procedural safeguards insured by *Miranda* as those afforded under Article 1, Section 23). We find no basis, in this situation, for applying the State Constitution in a manner differently from the United States Constitutional Amendments discussed previously and therefore hold that the trial judge properly denied defendant's motion to suppress his inculpatory statement.

## II.

**[6]** By defendant's second assignment of error he contends that the trial court's imposition of the maximum punishment, based upon a finding of the aggravating factor that defendant had a prior conviction punishable by more than sixty days imprisonment, constitutes cruel and unusual punishment in violation of the Eighth Amendment, where the prior conviction was for disorderly conduct.

On appellate review, our task is to determine whether the trial judge abused his discretion in imposing a sentence greater than the presumptive sentence. *State v. Teague*, 60 N.C. App. 755, 300 S.E.2d 7 (1983). The proper test for determining whether an abuse of discretion has occurred is the rational basis test. This grants the trial judge a great deal of discretion in finding factors in aggravation and mitigation, as well as in sentencing. It is only in exceedingly unusual non-capital cases that a sentence imposed by a trial court will be so disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment. *State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983). A trial

STATE v. HARRIS

[111 N.C. App. 58 (1993)]

judge is not required to justify the weight he attaches to any one factor and it is within his discretion to determine that one factor in aggravation outweighs more than one factor in mitigation and vice versa. *State v. Ahearn*, 307 N.C. 584, 597, 300 S.E.2d 689, 697 (1983); *see also State v. Penley*, 318 N.C. 30, 347 S.E.2d 783 (1986) (trial judge found that a single aggravating factor outweighed seven mitigating factors). The sentencing judge also retains the discretion to impose multiple sentences to run consecutively or concurrently. *Ysaguire*, 309 N.C. at 785, 309 S.E.2d at 440. When the sentence is supported by the evidence introduced at trial, it will not be disturbed on appeal. *State v. Ruffin*, 90 N.C. App. 705, 370 S.E.2d 275 (1988).

In the subject case, defendant was found guilty of assault with a deadly weapon with intent to kill inflicting serious injury and robbery with a dangerous weapon. Assault with a deadly weapon with intent to kill inflicting serious injury is a class F felony carrying a presumptive sentence of six years and a maximum sentence of twenty years. Robbery with a dangerous weapon is a class F felony which carries a mandatory minimum sentence of fourteen years and a maximum sentence of forty years. The trial judge found as an aggravating factor that defendant had a record of criminal offenses involving punishment of more than sixty days confinement, based upon a prior conviction for disorderly conduct. The court, upon finding no mitigating factors, determined that the aggravating factors outweighed mitigating factors and sentenced defendant to consecutive terms of 20 years imprisonment on the assault with a deadly weapon conviction and 40 years imprisonment on the robbery with a deadly weapon conviction.

The imposition of consecutive maximum terms does not, standing alone, constitute cruel and unusual punishment. "A defendant may be convicted of and sentenced for each specific criminal act which he commits." *Ysaguire*, 309 N.C. at 786, 309 S.E.2d at 441. Defendant was convicted of two serious crimes, both involving the use of deadly weapons. It was within the trial court's discretion to impose the maximum sentence for those offenses and we find nothing so grossly disproportionate in the sentencing judgment for these criminal offenses to represent a cruel or unusual punishment in North Carolina.

For the foregoing reasons, defendant failed to show prejudicial error in his trial and sentencing and the judgment is therefore affirmed.

No Error.

Judges JOHNSON and JOHN concur.