STATE OF NORTH CAROLINA v. DEVON EL BALLEW

No. 9327SC518

(Filed 1 March 1994)

1. **Criminal Law § 544 (NCI4th)— improper question by prosecution—judge's prompt remedial measures—new trial not required**

    In a prosecution of defendant for first-degree rape and sexual activity by a substitute parent where defendant's victims were his stepdaughters, the prosecutor's question asked of defendant's natural daughter as to whether her father had done anything to her did not require a mistrial, since the trial judge sustained defendant's objection, instructed the jury not to take any inference from the question or partial question, excused the jury, and admonished the prosecutor to refrain from the particular line of questioning.

    **Am Jur 2d, Trial §§ 39 et seq.**

2. **Evidence and Witnesses § 3106 (NCI4th)— victims' statements —additional facts included—statements admissible for corroboration**

    Statements by two rape victims were admissible as corroborative evidence even though they included additional facts not testified to by the victims, since the victims testified that the three charged incidents were not the only incidents of sexual abuse; they specifically referred to other months when sexual assaults for which defendant was not charged occurred; and the victims' statements, as read into evidence by the detective who took them, tended to strengthen and add credibility to the trial testimony of the victims.

    **Am Jur 2d, Witnesses §§ 632 et seq.**

3. **Arrest and Bail § 159 (NCI4th)— bond revoked after second day of trial—right to confer with counsel unaffected**

    Defendant was not prejudiced by the trial court's revocation of his bond after the second day of trial, although defendant contended that he was precluded from assisting his attorney in preparing for the final day of trial, since nothing prevented counsel from conferring all night with defendant in jail, and, upon request of defense counsel, the trial judge

granted a recess for as long as defendant needed on the third day of trial so defendant and his attorney could confer.

**Am Jur 2d, Bail and Recognizance §§ 27, 28.**

4. **Trial § 482 (NCI4th) — jury dispersed — right to poll jury waived**

Where the verdicts were returned and recorded, the judge thanked the jurors for their service, the judge told them they could have a seat in the courtroom or return to the jury assembly room, the judge told the jurors that they could discuss the case with anyone, and the jurors all left the courtroom, the jury had "dispersed" within the meaning of N.C.G.S. § 15A-1238, and, because the jury dispersed before defendant requested that the jury be polled, defendant waived his right to poll the jury.

**Am Jur 2d, Trial § 1768.**

5. **Rape and Allied Offenses § 82 (NCI4th) — first-degree rape — sexual activity by substitute parent — sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for first-degree rape and sexual activity by a substitute parent where the two victims testified in detail as to the charged offenses, and their testimony was corroborated by the statements they made to a police detective; a social worker testified that the girls told her of several instances of sexual abuse by defendant; and one of the doctors who examined the girls testified that the girls told him of the instances of sexual abuse and testified that his examinations of the girls were consistent with those of girls who had had sexual intercourse, including that one girl had a sexually transmitted disease.

**Am Jur 2d, Rape §§ 88 et seq.**

6. **Criminal Law §§ 1062, 1431 (NCI4th) — consecutive life sentences plus fifteen years to run consecutively — one aggravating factor — sentence proper — sentence unaffected by discovery of handcuff key on defendant**

Where defendant was convicted of two counts of first-degree rape and one count of sexual activity by a substitute parent, and the trial court found that the only factor in aggravation was that defendant had prior convictions for similar sexual assaults punishable by more than sixty days confine-

ment and that there were no mitigating factors, the trial court did not err in sentencing defendant to consecutive sentences of life imprisonment for each rape conviction and fifteen years for the sexual activity by a substitute parent conviction; moreover, the record clearly showed that defendant's sentence was not affected by the discovery of a handcuff key on defendant's person shortly after the jury announced its verdict.

**Am Jur 2d, Criminal Law §§ 552 et seq., 598.**

Judge JOHNSON dissenting.

Appeal by defendant from judgments and commitments entered 3 February 1993 by Judge Claude S. Sitton in Gaston County Superior Court. Heard in the Court of Appeals 11 January 1994.

*Attorney General Michael F. Easley, by Assistant Attorney General K. D. Sturgis, for the State.*

*Carpenter & James, by Reid C. James, for defendant-appellant.*

LEWIS, Judge.

On 3 February 1993, defendant was convicted, after a jury trial, of two counts of first-degree rape and one count of sexual activity by a substitute parent. He received a sentence of life imprisonment for each of the rape convictions and a sentence of fifteen years imprisonment for the sexual activity by a substitute parent conviction, all sentences to run consecutively. From these judgments and commitments defendant appeals.

Defendant's convictions arose out of the following facts. The victims, C. and L., were twelve and thirteen years old, respectively, when their mother married defendant in May of 1991. The victims and their mother then moved in with defendant and defendant's fifteen year-old son. Over the next seven months, defendant repeatedly engaged in sexual intercourse with each of the two girls. The three instances charged occurred as follows. On 25 October 1991, C.'s mother and sister were Christmas shopping, while defendant and C. were home alone. The two went to the back bedroom where defendant asked C. if she wanted to engage in sex. Upon her refusal defendant forced her to have sexual intercourse with him.

On 5 November 1991, L. did not go to school because she had poison ivy. Defendant was the only other person at home.

Defendant entered L.'s bedroom twice and asked her if she wanted to have sex with him. L. responded both times that she did not. Defendant then engaged in sexual intercourse with her against her will.

On the afternoon of 31 December 1991, C. and defendant were again home alone. Defendant called C. to the back bedroom where he asked her several times if she would engage in sexual intercourse with him, and each time, C. told him no. Defendant then forced her to engage in sexual intercourse with him. They then heard C.'s mother return from the store. Defendant told C. to pull up her pants and her underwear, and the two of them went into the kitchen where defendant told C.'s mother that she had forgotten to buy several items. When C.'s mother left the house, defendant again forced C. to have sex with him.

A week later, on 6 January 1992, C. first told her mother about the incidents. The girls' mother and their aunt then reported the matter to the police. Subsequently, the girls were seen by social workers and physicians. Gynecological exams of the girls were consistent with exams of girls who had had sexual intercourse, and C. tested positive for a sexually transmitted disease.

At trial, after the two girls testified, the State called defendant's natural daughter, A., to the stand. The State sought to elicit testimony regarding sexual contact between defendant and A. After a few preliminary questions, the following exchange which is the subject of defendant's first assignment of error, took place:

Prosecutor: At the time you were twelve or thirteen years of age were you subjected to any—

Defense Counsel: (Interrupting)—Objection.

The Court: Sustained.

Prosecutor: What, if anything—

The Court: (Interrupting)—Members of the jury, do not take any inference from the question or partial question that was asked by the district attorney in your jury deliberations.

Prosecutor: What, if anything, did your father do to you—

Defense Counsel: (Interrupting)—Objection.

Prosecutor: (Continuing)—while you were living in the home—

The Court: (Interrupting)—Sustained. Members of the jury, let me ask you to step to the jury room. Do not discuss the case.

During the *voir dire* that followed, the judge ruled that the questions of the prosecutor were improper, and he again sustained defendant's objections. The judge then admonished the prosecutor to refrain from the improper line of questioning. Defendant moved for a mistrial, and the judge denied the motion. When the jury returned, the judge instructed:

Members of the jury, the Court instructs you that evidence does not come from a question that is asked, and I instruct you that the last question that was asked you should not take any inference from the question that was asked in any form or fashion in your jury deliberations. So do not take any inference therefrom in regard to these matters. . . .

[1] Defendant argues that the prosecutor's question planted in the minds of the jurors the inference that defendant sexually abused his natural daughter, and that this improper question warranted a mistrial.

"A mistrial is appropriate only for serious improprieties which render impossible a fair and impartial verdict under the law." *State v. Chapman*, 294 N.C. 407, 417-18, 241 S.E.2d 667, 674 (1978). Further, the trial judge's ruling on a motion for mistrial is not reviewable unless there is a showing of gross abuse of discretion. *State v. Elliott*, 64 N.C. App. 525, 527, 307 S.E.2d 844, 845 (1983).

In *State v. Self*, 280 N.C. 665, 187 S.E.2d 93 (1972), the defendant made a motion for mistrial under similar circumstances, and the motion was denied. The Supreme Court held that

the [trial] court's prompt action in sustaining defendant's objection to the question and in excusing the jury and instructing the solicitor not to ask further questions along that line, coupled with the court's specific instruction to the jury not to consider the question but to strike it from their mind, was sufficient to remove any possibility of error.

*Id.* at 671, 187 S.E.2d at 97.

In the instant case, the trial judge sustained defendant's objection, instructed the jury not to take any inference from the question or partial question, excused the jury, and admonished the prosecutor to refrain from the particular line of questioning. Accordingly, we find no gross abuse of discretion in the trial judge's denial of defendant's motion for a mistrial. The trial judge could hardly have been more timely or correct in his reaction.

Defendant further argues that the trial judge's second cautionary instruction was error, as it drew particular attention to the prosecutor's improper question. However, before the judge gave the second instruction, and while the jury was still out of the courtroom, the judge twice informed counsel that he would give a second cautionary instruction, and defense counsel did not object. Likewise, when the judge gave the instruction, defense counsel did not object. Thus, defendant has failed to preserve the issue for appellate review. N.C.R. App. P. 10(b).

[2] As his third assignment of error, defendant argues that the trial court erred in denying his motion for a mistrial made after the court allowed the State to introduce into evidence statements of the two victims. Defendant contends that the statements were inadmissible because they did not corroborate the earlier testimony of the girls.

Prior consistent statements of a witness are admissible if they corroborate the testimony of the witness. *State v. Ramey*, 318 N.C. 457, 468, 349 S.E.2d 566, 573 (1986). To be corroborative, the prior statement of the witness need not relate to specific facts testified to by the witness at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony. *Id.* at 469, 349 S.E.2d at 573. Furthermore, a prior statement that contains new or additional information not referred to in the witness' trial testimony may be admitted if the prior statement tends to add weight or credibility to the trial testimony. *Id.* at 469, 349 S.E.2d at 573-74.

The corroborative evidence about which defendant complains was in the form of the victims' statements to a police detective, which were read into evidence by the detective. These statements included accounts of several incidents of sexual abuse, while the victims' trial testimony centered only on the three incidents charged. Defendant argues that the statements read by the detective were not admissible as corroborative evidence because they went beyond

the testimony of the victims at trial. However, the victims, in their trial testimony, stated that the three charged incidents were not the only incidents of sexual abuse. Furthermore, they specifically referred to other months when sexual assaults for which defendant was not charged occurred. The victims' statements to the detective, as read into evidence by the detective, tended to strengthen and add credibility to the trial testimony of the victims. Thus, the statements were admissible as corroborative evidence even though they included additional facts not testified to by the victims. *Ramey*, 318 N.C. at 470, 349 S.E.2d at 574.

[3]  As his fourth assignment of error, defendant argues that the trial court abused its discretion in revoking his bond after the second day of trial, thereby precluding him from assisting his attorney in preparing for the final day of trial. Even if the trial court abused its discretion, we find that defendant has failed to show that he was prejudiced. Defendant argues that his incarceration after the second day of his three-day trial prejudicially affected his ability to confer with his attorney. However, as the trial judge noted, the jail was located in the courthouse, the defendant was in the jail all night, and defense counsel had all night and up until court began the next morning to confer with defendant. Further, the judge, upon the request of defense counsel, granted a recess for "as long as you need" on the third day of trial so that defendant and his attorney could confer. Accordingly, we find that defendant has shown no prejudice, and we overrule this assignment of error. *See State v. Jefferson*, 68 N.C. App. 725, 315 S.E.2d 744, *disc. review denied and appeal dismissed*, 311 N.C. 766, 321 S.E.2d 151 (1984).

[4]  Defendant next argues that the trial court erred by denying his request to poll the jury. The record reveals that after the judge read the verdict forms aloud, the verdicts were recorded, and the judge thanked the jury for its service. He then stated:

> You may, if you choose to, step down and have a seat in the courtroom or else I would ask you to return briefly to the jury assembly room, whichever you may choose to do so. If you desire to discuss the case with anyone, it would up [sic] to you. You are not compelled to but you are at liberty to depending on what your choice may be. You may step down and have a seat in the courtroom or I would ask that you go back briefly to the jury assembly room.

After all of the jury members had left the courtroom, the judge asked if there was anything for the record. Defense counsel then requested that the jury be polled, and the judge, noting that all twelve jurors had left the courtroom, denied the request.

N.C.G.S. § 15A-1238 provides in pertinent part: "Upon the motion of any party made after a verdict has been returned and *before the jury has dispersed,* the jury must be polled." N.C.G.S. § 15A-1238 (1988) (emphasis added). In *State v. Black,* 328 N.C. 191, 198, 400 S.E.2d 398, 402 (1991), our Supreme Court explained that the rationale behind requiring that the polling of the jury be before dispersal is "to ensure that nothing extraneous to the jury's deliberations can cause any of the jurors to change their minds." Such extraneous influences may consist of things the juror sees or hears, or may merely be the juror's own weighing of the evidence and the law independently and in the absence of the rest of the jury. *Id.* at 198, 400 S.E.2d at 402-03.

In the present case, the jurors were told that they could remain in the courtroom or return to the jury assembly room, and all chose the latter. They were also told that they could discuss the case with anyone if they so desired. Upon leaving the jury box, the jurors became susceptible to any number of extraneous influences. Therefore, we conclude that the jury had "dispersed" within the meaning of N.C.G.S. § 15A-1238. And, because the jury dispersed before defendant requested that the jury be polled, defendant waived his right to poll the jury. *Black,* 328 N.C. at 198, 400 S.E.2d at 403. Accordingly, this assignment of error is overruled.

[5] Defendant's sixth assignment of error is that the trial judge erred in denying defendant's motions to dismiss made at the close of the State's evidence and at the close of all of the evidence. In a motion to dismiss, the question is whether the evidence is legally sufficient to support a verdict of guilty on the offense charged, so as to warrant submission of the charge to the jury. *State v. Thomas,* 65 N.C. App. 539, 541, 309 S.E.2d 564, 566 (1983). We must view the evidence in the light most favorable to the State and afford the State every reasonable inference that may arise from the evidence. *Id.* at 542, 309 S.E.2d at 566. There must be substantial evidence to support a finding that an offense has been committed and that the defendant committed it. *State v. Cummings,* 46 N.C. App. 680, 683, 265 S.E.2d 923, 925, *aff'd,* 301 N.C. 374,

271 S.E.2d 277 (1980). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In the present case, the two victims testified in detail as to the charged offenses, and their testimony was corroborated by the statements they made to a police detective. Further, a social worker testified that the girls told her of several instances of sexual abuse by defendant. Finally, one of the doctors who examined the girls testified that the girls told him of the instances of sexual abuse. He also testified that his examinations of the girls were consistent with those of girls who had had sexual intercourse and that one of the girls tested positive for a trichomonas organism, which is a sexually transmitted organism. The defendant offered no evidence. We find that there was sufficient evidence to support a verdict of guilty on the offenses charged and that defendant's motions to dismiss were properly denied.

**[6]** By defendant's seventh assignment of error he argues that the sentence of the trial court was excessive based upon the evidence presented and was improperly influenced by the discovery of a handcuff key found on the defendant's person shortly after the verdict was rendered.

The task of this Court on appellate review is to determine whether the trial judge abused his discretion in imposing a sentence greater than the presumptive sentence. *State v. Harris*, 111 N.C. App. 58, 70, 431 S.E.2d 792, 800 (1993). The test used to determine whether there has been an abuse of discretion is the rational basis test. *Id.* This grants the trial judge great discretion in finding factors in aggravation and mitigation, as well as in sentencing. *Id.* The trial judge also has the discretion to impose multiple sentences to run consecutively or concurrently. *Id.* at 71, 431 S.E.2d at 800. When a sentence is supported by the evidence introduced at trial, it will not be disturbed on appeal. *Id.*

In the present case, defendant was convicted of two counts of first-degree rape and one count of sexual activity by a substitute parent. First-degree rape is a class B felony which carries a mandatory life sentence. Sexual activity by a substitute parent is a class G felony carrying a presumptive sentence of four and one-half years and a maximum sentence of fifteen years. The judge found that the only factor in aggravation was that defendant had prior convictions for offenses punishable by more than sixty days

confinement. The judge found no factors in mitigation. Defendant was sentenced to life imprisonment for each rape conviction and fifteen years for the sexual activity by a substitute parent conviction, the sentences to run consecutively. The record reveals that defendant's prior convictions were for similar sexual assaults in Georgia. We find that the trial judge did not abuse his discretion in sentencing defendant.

We find no merit in defendant's contention that the sentence was improperly influenced by the discovery of a handcuff key on the defendant's person shortly after the jury announced its verdict. When the key was brought to the judge's attention, he ordered that defendant be placed in leg irons because defendant was a security risk. The judge also ordered that an attachment be made to the judgment advising the Department of Correction that defendant had possessed a handcuff key and that the court considered him a security risk. When defense counsel brought up the issue of the handcuff key at the sentencing hearing, the trial judge stated:

> Well I am not going to punish him by any stretch of the imagination about that key. That's not before this court. The only thing, I had him brought into court at this time due to the fact that it was found, in leg irons. That's the only thing I have taken into consideration and will take into consideration. I will not be imposing any sentence based on the fact that he may have had or did have a handcuff key on him when he was taken downstairs.

Thus, the record clearly shows that defendant's sentence was not affected by the presence of the handcuff key. Accordingly, we find no error in defendant's sentencing.

During cross examination of C., the State's first witness, defendant moved to sequester the witnesses for the State. Defendant assigns error to the judge's denial of this motion.

A motion to sequester is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Batts*, 93 N.C. App. 404, 410, 378 S.E.2d 211, 214 (1989). In the present case, defendant has failed to show any abuse of discretion. Accordingly, this assignment of error is overruled.

For the foregoing reasons, we find that defendant's trial and sentencing were free from prejudicial error.

**STATE v. BALLEW**

[113 N.C. App. 674 (1994)]

No error.

Judge Eagles concurs.

Judge Johnson dissents.

Judge JOHNSON dissenting.

I respectfully dissent. I believe the colloquy described herein during the State's direct examination of defendant's natural daughter resulted in "substantial and irreparable prejudice" to defendant's case, and a mistrial should have been declared. *See* North Carolina General Statutes § 15A-1061 (1988). I believe the nature of these partial questions which the prosecutor asked were of such a prejudicial nature that they rose to the level of inadmissible evidence.

Our Supreme Court has stated:

"In appraising the effect of incompetent evidence once admitted and afterwards withdrawn, the Court will look to the nature of the evidence and its probable influence upon the minds of the jury in reaching a verdict. In some instances because of the serious character and gravity of the incompetent evidence and the obvious difficulty in erasing it from the mind, the Court has held to the opinion that a subsequent withdrawal did not cure the error. . . ." *S. v. Strickland*, 229 N.C. 201, 207, 49 S.E.2d 469, 473; *S. v. Green*, 251 N.C. 40, 46, 110 S.E.2d 609, 613, and cases cited. . . . Whether the prejudicial effect of such incompetent statements should be deemed cured by such instructions depends upon the nature of the evidence and the circumstances of the particular case.

*State v. Aycoth*, 270 N.C. 270, 272-73, 154 S.E.2d 59, 60-61 (1967). *See also State v. Hunt*, 287 N.C. 360, 215 S.E.2d 40 (1975).

In the instant case, the first two witnesses for the State were the alleged victims; these were the only witnesses testifying with personal knowledge of the alleged rapes. The next witnesses for the State were the pediatrician who examined the children, the alleged victims' mother (who was formerly married to defendant) and defendant's sister-in-law. Defendant was living with his sister-in-law and her husband (his brother) at the time of trial, and had done so since the reporting of the alleged incidents. Defendant's sister-in-law testified, when asked about her reaction after

STATE v. BALLEW

[113 N.C. App. 674 (1994)]

the alleged victims' mother came to her and told her about the allegations,

> [t]o begin with, I didn't believe the allegations. I told Debbie [the victims' mother] when we left there, I said, ". . . I have a lot of mixed emotions right now about what you have told me." I didn't feel like the children were in danger and neither did I feel that Debbie was in danger.

Q. Why is that?

A. Sir?

Q. Why is that?

A. Devon had lived in my home for a long time. He is not a person to be violent; he is not a person to even raise his voice; and he is certainly not a threat to anybody. He is very protective; he was protective of those children and of Mrs. Ballew, his wife, just like he is protective of me as his sister-in-law. Devon was raised and brought up to respect women.

The next witness for the State was defendant's natural daughter. The State had not given notice that it intended to call defendant's natural daughter as a witness, nor had the State provided defendant's counsel with any statements that the witness had provided. After introductory questions establishing the witness as defendant's twenty-two year old natural daughter, the following testimony in the presence of the jury resulted:

Q. [Prosecutor:] At the time you were twelve or thirteen years of age were you subjected to any—

> MR. JAMES [defense counsel]:
> (Interrupting)— OBJECTION.

THE COURT: SUSTAINED.

Q. [Prosecutor:] What, if anything—

THE COURT: (Interrupting)—Members of the jury, do not take any inference from the question or partial question that was asked by the district attorney in your jury deliberations.

Q. [Prosecutor:] What, if anything, did your father do to you—

> MR. JAMES [defense counsel]:
> (Interrupting)— OBJECTION.

Q. [Prosecutor:] (Continuing)—while you were living in the home—

THE COURT: (Interrupting)—SUSTAINED. Members of the jury, let me ask you to step to the jury room. Do not discuss the case.

After a *voir dire* hearing, the trial court properly ruled this evidence inadmissible. The prosecutor asked no further questions of defendant's natural daughter and she was dismissed from the stand.

I believe the intent of the prosecutor to place this improper evidence before the jury was accomplished. The partial questions certainly intimated that the witness, defendant's daughter, as a twelve or thirteen year old young girl, as were the alleged victims in the case *sub judice*, was subject to something her "father [did] to her," i.e., sexual abuse. I acknowledge that the court, while the partial questions were being asked, promptly gave the jury instructions to not take any inference from the partial questions, excused the jury and admonished the prosecutor, and then repeated curative instructions upon the return of the jury. However, I believe that this testimony as heard by the jury was so prejudicial that it could not be cured. As a result, defendant was irreparably prejudiced.

I vote to reverse and award defendant a new trial.